GERZÓN BEAUCHAMP, demandante y recurrente, *v.* DORADO BEACH HOTEL, demandado y recurrido.

*Número:* R-69-236         *Resuelto:* 12 de febrero de 1970

*Demetrio Fernández* y *Francisco R. Acevedo Castañeda,* abogados del recurrente; *Fiddler, González & Rodríguez* y *Pedro Pumarada,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Sobre los hechos no hay controversia. Gerzón Beauchamp fue empleado por el Hotel Dorado Beach en calidad de "croupier aprendiz." Posteriormente se quejó de que a tenor con el convenio colectivo él debió haber sido nombrado "croupier probatorio" y no "aprendiz." El tipo de nombramiento conllevaba una diferencia en salario, ya que como croupier aprendiz su salario mensual era de $300.00 mientras que como croupier probatorio era de $520.00.

La Unión de Trabajadores de la Industria Gastronómica, Local 610, representante exclusiva para fines de negociación colectiva de los croupiers de la querellada, presentó una querella ante el Comité de Quejas y Agravios establecido por el convenio colectivo. Al producirse un *impasse* entre los miembros del Comité, las partes solicitaron que el Negociado de Conciliación y Arbitraje del Departamento del Trabajo designara un árbitro para que entendiera en la querella. Así se hizo y al mismo se le sometió el siguiente acuerdo de sumisión: "Si el sueldo de $300.00 asignado al Sr. Gerzón Beauchamp, el día 24 de noviembre de 1964, fue o no correcto."

En 29 de septiembre de 1966 el árbitro emitió su laudo. Determinó que el querellante debió haber sido empleado como croupier probatorio y no como croupier aprendiz y ordenó "el pago de salarios retroactivos a base de la clasificación de Croupier Probatorio, efectivo a la fecha de su nombramiento."

Una vez rendido el laudo los representantes de las partes se reunieron para ejecutar la decisión del árbitro. Llegaron a un acuerdo pero en aquel momento no se solicitó el pago de la suma igual a la cantidad no pagada que por concepto de liquidación de daños ordena en estos casos el Art. 13 de la Ley Núm. 379 de 1948, según enmendada; 29 L.P.R.A. sec. 282.

En 20 de agosto de 1968 el querellante, acogiéndose al procedimiento sumario que autoriza la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 y ss., presentó en el Tribunal Superior una querella sobre reclamación de salarios, solicitando que se ordenase el pago de la suma adicional antes mencionada, más las costas y honorarios de abogado. La querellada contestó planteando como defensa varias cuestiones de derecho pero no surgió controversia sobre los hechos. En 28 de febrero de 1969 el querellante presentó una moción de sentencia sumaria. El Tribunal dictó sentencia sumaria a favor de la querellada y declaró sin lugar la reclamación por concepto de la suma igual a la cantidad no pagada, objeto de la querella.

■ El querellante señala que el Tribunal de instancia erró al entender que el demandante no tenía derecho a reclamar la suma adicional igual a la cantidad no pagada por no haberse planteado esa cuestión ante el árbitro y por entender además que nuestra decisión en *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), tiene el alcance de considerar renunciado el derecho a la suma adicional que la citada Ley Núm. 379 le confiere al obrero, si éste recurre al Comité de Quejas y Agravios y al arbitraje.

Tiene razón el querellante-recurrente. Ante el árbitro se planteó si el sueldo de $300.00 asignado a Beauchamp era el correcto o no. El árbitro determinó que ese sueldo no fue el correcto. Concluyó que Beauchamp estaba cubierto por el Art. VI(5) del convenio colectivo, el cual provee para un salario de $520.00 mensuales y ordenó que se le pagasen los salarios retroactivos a base de esa escala. Hablando con exactitud, a la luz del acuerdo de sumisión—si el salario de $300.00 era correcto o no—lo que el árbitro resolvió fue que no lo era porque a Beauchamp lo cubría el Art. VI(5) del convenio. Esa es la contestación estricta al acuerdo de sumisión. Lo demás es una conclusión necesaria de la decisión del árbitro: Si lo cubría el Art. VI(5) del convenio, el salario correcto era de $520.00 porque ese es el salario que dicho artículo establecía; y como a Beauchamp se le habían liquidado los meses a razón de $300.00 correspondía que le pagasen lo que le adeudaban.

■ Al árbitro no había que someterle la cuestión de si se debía pagar o no la suma adicional porque eso es una consecuencia inevitable—por ordenarlo así la ley—de la decisión del árbitro. Así, por ejemplo, tampoco tenía el árbitro que decidir que al querellante había que pagarle en moneda de curso legal. Ni las partes podían pactar en contra de la disposición de ley que ordena la suma adicional, ni el árbitro podía fallar en forma que la hiciese inoperante pues los laudos no pueden violar la política pública, *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, 69 D.P.R. 782, 800 (1949), y las disposiciones de ley sobre horas y salarios encarnan la política pública del país sobre esas cuestiones.

En *Encarnación* v. *Jordán*, 78 D.P.R. 505 (1955), dijimos lo siguiente a la pág. 513:

[S]i el patrono deja de pagar a sus empleados el salario estipulado, vendrá obligado a pagarle además de las cantidades no pagadas, una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogado

del procedimiento. Esto es así porque la disposición del art. 13 como otras tantas disposiciones de la referida Ley 379, tales como la que fija la jornada legal de trabajo, la que provee compensación a tipo doble para las horas extras de trabajo, la que declara irrenunciable la compensación adicional a base de un tipo doble de trabajo, etc., forman parte de y deben considerarse incorporadas al contrato de trabajo ya que cualquier convenio en contrario entre el patrono y sus empleados queda suplantado por el estatuto."

El pago de la penalidad, por ser ésta ordenada por la ley y por considerarse parte del contrato de trabajo, no depende de que se recurra a un pleito pues también procede cuando la deuda de salarios—deuda que da margen a la penalidad—se establece por un comité de quejas y agravios o mediante arbitraje.

Como en sus alegatos las partes recurren a los casos de *Pérez* v. *Autoridad Fuentes Fluviales*, supra, de *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961) y de *J.R.T.* v. *Presbyterian Hospital, Inc.*, 96 D.P.R. 569 (1968), para apoyar algunos de sus argumentos, creemos conveniente expresar lo que sigue. Cada uno de esos tres casos mencionados y también el de autos son casos distintos que surgieron de situaciones de hechos diferentes y que por lo tanto requerían y requieren cada uno su propia solución.

En *Rivera Adorno* v. *Autoridad de Tierras*, supra, se trataba de un obrero unionado que fue despedido. Como el obrero no estuvo de acuerdo con el despido, el patrono, a tenor con lo dispuesto en el convenio colectivo, llevó el caso al Comité de Quejas y Agravios y de allí pasó al árbitro. En contraste con la actitud del patrono, el obrero tomó la posición de que él no consentía en someter el asunto a arbitraje y se fue a los tribunales.

De manera que la cuestión planteada en *Rivera Adorno* era la de si un obrero podía hacer caso omiso de la disposición del convenio colectivo que proveía para la solución de las disputas obrero-patronales mediante el mecanismo de un

Comité de Quejas y Agravios y de arbitraje. Desde luego, resolvimos que eso no podía ser. Allí dijimos, a la pág. 264, que "dado un convenio colectivo válido, el mismo obliga a la unión y a sus miembros individualmente así como también obliga al patrono." De más estarían los convenios colectivos negociados por las uniones y los patronos si los obreros individuales pudiesen hacer caso omiso de sus disposiciones. El convenio colectivo se considera revestido en gran medida de interés público porque propende a la paz industrial. Lo que pretendía el querellante en *Rivera Adorno* equivalía a poco menos que producir el caos en la contratación obrero-patronal. El caso de autos no es igual al de *Rivera Adorno*; aquí el querellante recurrió al mecanismo del Comité de Quejas y Agravios y al arbitraje.

En *Pérez*, supra, surgió una controversia entre el obrero y el patrono sobre salarios por horas extras. Allí el convenio proveía para la dilucidación mediante arbitraje de todas las querellas o reclamaciones que pudiesen surgir en relación con las disposiciones del convenio que no fuesen resueltas en el Comité de Quejas y Agravios. Pérez afirmó que él no cuestionaba lo resuelto en *Rivera Adorno*, esto es, que el obrero viene obligado a recurrir al Comité de Quejas y Agravios y al arbitraje, si así se pactó en el Convenio, pero alegó que su querella no podía ser sometida a esos mecanismos por tratarse de salarios por horas extras. En otras palabras, alegó que la materia objeto de su querella está excluida de la cláusula de arbitraje. Examinamos el convenio y encontramos que eso no era correcto. Pérez confundió el medio, o sea, el mecanismo, con la sustancia. No vio que el Comité y el arbitraje eran mecanismos para determinar si el patrono en efecto le debía las horas extras, pero que la forma de pagarlas está dispuesta por la ley. Algo parecido ocurre en los tribunales. Estos determinan si se deben o no los salarios y en caso afirmativo aplican la ley que es la que dispone la forma de pagarlos.

En *Pérez*, luego de discutir los innegables valores sociales que en el campo de las relaciones obrero-patronales sirven los convenios colectivos y los mecanismos de quejas y agravios y el arbitraje, y de examinar la jurisprudencia del Tribunal Supremo de los Estados Unidos sobre la materia, resolvimos que por no estar prohibido por la ley ni por la Constitución, las controversias sobre salarios pueden ser sometidas a los antes mencionados mecanismos si así se pacta en el convenio colectivo. Encontramos que así se había pactado en aquel caso y que por lo tanto Pérez debía cumplir con lo pactado. Allí dijimos que "el convenio colectivo es la ley entre las partes, siempre y cuando no contravenga las leyes ni la Constitución." Allí nada se planteó y nada se resolvió sobre la suma adicional, conocida como la penalidad, que ordena la citada Ley Núm. 379 y la cual es el motivo de la controversia en el caso de autos.

Dos años después de nuestra decisión en *Pérez* se planteó una situación igual a la de ese caso ante el Tribunal Supremo de los Estados Unidos y dicho Tribunal la resolvió en igual forma que lo hicimos nosotros. En vez de acudir al mecanismo de quejas y agravios y de arbitraje que proveía el convenio colectivo, un obrero demandó a su patrono en los tribunales en reclamación de salarios. Igual que Pérez, alegó que esa materia estaba excluida de la cláusula de arbitraje del convenio. El Tribunal encontró que no lo estaba y resolvió que el obrero debía recurrir al mecanismo establecido por el convenio. *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965).

En *J.R.T.* v. *Presbyterian Hospital, Inc.*, supra, la situación también era distinta a la del caso de autos. Allí sencillamente el patrono se negó a acatar el laudo del árbitro y la Junta de Relaciones del Trabajo recurrió a nosotros para que ordenásemos al patrono cumplir con el mismo. La posición del patrono demandado era que el laudo era nulo. Luego de examinar la cuestión encontramos que dicha posición no tenía mérito y ordenamos al patrono cumplir con el laudo.

Tampoco se planteó allí, ni lo resolvimos, que se había renunciado al derecho a la suma adicional que confiere el Art. 13 de la Ley Núm. 379.

La distinguida representación legal del querellante pulcramente nos solicita que a tenor con las disposiciones de la Ley Para Regular la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados Contra sus Patronos, Ley Núm. 402 de 12 de mayo de 1950 (32 L.P.R.A. secs. 3114–3117) fijemos los honorarios de los abogados del querellante. Así lo haremos.

Por las razones expuestas en esta opinión *se revocará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 15 de agosto de 1969; se declarará con lugar la reclamación por concepto de la suma igual no pagada al querellante; se condenará al patrono Dorado Beach Hotel a pagar al querellante la suma de $5,400.00 que es la suma igual dejada de pagar, más las costas, y la cantidad de $1,500.00 para honorarios de los abogados del querellante.* ([1]) *Fijamos dicha suma de honorarios conscientes de que los mismos se pueden fijar teniendo en mente no sólo la cuantía de la suma obtenida sino también la importancia del caso y el trabajo hecho por el abogado.*

Lo aquí resuelto se aplicará solamente a las decisiones de los Comités de Quejas y Agravios y a los laudos de arbitraje que se emitan a partir de la fecha de esta opinión, pero incluyendo el presente caso.

El Juez Asociado Señor Blanco Lugo no intervino.

---

([1]) No se alegó ni surge de los autos que en relación con la reclamación de salarios y de la penalidad hubiese habido una transacción ante el Secretario del Trabajo. 29 L.P.R.A. sec. 282.