ROBERTO PAGÁN RODRÍGUEZ, HÉCTOR GARCÍA y WILLIAM RODRÍGUEZ, demandantes y recurridos, *v.* FUNDACIÓN HOSPITAL DR. PILA, demandada y peticionaria.

*Número:* O-82-455 *Resuelto:* 28 de abril de 1983

*Luis F. Antonetti,* de *Goldman & Antonetti,* abogado de la peticio-
naria; *Jorge Tantao Echevarría,* abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del
Tribunal.

La controversia aquí planteada gira sobre la relación
entre dos importantes principios de orden público: la nece-
sidad de proteger el derecho constitucional y estatutario de
cada trabajador a recibir compensación extraordinaria por
trabajo en exceso del límite diario y la deseabilidad de
fomentar el uso del arbitraje laboral. En términos más
específicos, se nos presenta la cuestión del impacto de *Bar-*

*rentine* v. *Arkansas-Best Freight System*, 450 U.S. 728 (1981), si alguno, sobre la doctrina que establecimos en *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), y, en consecuencia, la necesidad de determinar si las reclamaciones de salarios solo pueden ventilarse ante los tribunales.

Los querellantes recurridos, los señores William Rodríguez, Héctor García y Roberto Pagán Rodríguez ("los obreros"), eran técnicos de laboratorio empleados por la Fundación Dr. Pila ("el patrono"). Todos pertenecían a la Unión de Técnicos y Profesionales del Hospital Dr. Pila, afiliada al Sindicato Puertorriqueño de Trabajadores ("la unión"). En noviembre de 1979 los obreros le solicitaron al presidente de la unión que gestionase la compensación de horas trabajadas por ellos en exceso de la jornada regular. El patrono se negaba alegadamente a pagar a tiempo doble las horas adicionales.

Poco después los representantes de la unión y el patrono se reunieron. Acordaron que el patrono haría un estudio. El informe correspondiente nunca se rindió. No se completó el procedimiento de quejas y agravios pactado por ellos en el convenio colectivo que consta en autos.

En el curso del 1980 el patrono transó la reclamación de algunos obreros. En ningún caso pagó la doble indemnización requerida. La compensación fue a tiempo simple, total en algunos casos y parcial en otros. Varios obreros se negaron a firmar. Las transacciones no fueron sometidas a la aprobación del Secretario del Trabajo.

Los tres obreros querellantes, dos de los cuales "transaron" su reclamación, incoaron demanda en el Tribunal Superior el 11 de septiembre de 1981, bajo el procedimiento especial establecido por la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. sec. 3118 *et seq.*), para reclamar salarios alegadamente adeudados bajo la Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 *et seq.*

El patrono presentó moción de sentencia sumaria. Alegó que el convenio entre las partes requería que cualquier queja entre ellas se sometiese a arbitraje compulsorio. Invocó a *Pérez* y solicitó que se declarase sin lugar la querella, por no haber acudido los obreros al procedimiento de quejas y agravios provisto en el convenio.

Los obreros se opusieron a la moción de sentencia sumaria. Expusieron que las "dilaciones y violaciones de dicho Convenio y la Ley 379, por parte de la Unión y la Fundación, los obligaron a recurrir a este Foro". Alegaron que acudir al foro contractual era ya insatisfactorio, que la norma de *Pérez* tiene excepciones y que *Barrentine* ampara su derecho a invocar directamente la vía judicial.

El Tribunal Superior denegó la moción de sentencia sumaria por estimar que los obreros "tenían justa causa para obviar el procedimiento de quejas y agravios y de arbitraje" en este caso y que *Barrentine* permite de todos modos que las querellas basadas en derechos conferidos por ley se diluciden por la vía judicial.

El patrono acudió en alzada ante nosotros y alega, en esencia, que la resolución de instancia viola la norma sentada en *Pérez*, la cual, a su juicio, no queda afectada por *Barrentine*.

En *Pérez*, supra, el obrero acudió directamente al tribunal en reclamación de salarios por concepto de horas extras bajo la Ley Núm. 379. El patrono sostuvo que, por disponer el convenio que se someterían a arbitraje "todas aquellas querellas o reclamaciones que puedan surgir en relación con las disposiciones de este convenio", el obrero tenía que acudir antes a tal procedimiento. El obrero argumentó, en contrario, que su querella se fundamentaba en la Constitución y la ley, no en el convenio, por lo que podía hacerse caso omiso de la cláusula de arbitraje. Resolvimos "que un patrono y una organización obrera pueden acordar válidamente en un convenio colectivo que las controversias sobre salarios y horas extra se ventilen y decidan mediante el

procedimiento de arbitraje acordado en el convenio". Pág. 129. En *Pérez* dijimos, además:

> El peticionario alega que si se le obliga a arbitrar a tenor con lo que pactó en los convenios colectivos, se le derrota su derecho constitucional a reclamar judicialmente el pago de compensación extraordinaria por horas extra. No estamos de acuerdo. Su derecho constitucional a dicha compensación extraordinaria garantizado por la Sec. 16 del Art. II de la Constitución no deroga su derecho *también constitucional* a organizarse y a negociar colectivamente con su patrono, derecho que le garantiza la Sec. 17 del mismo artículo. Fue precisamente en el ejercicio de su derecho constitucional a negociar colectivamente que el peticionario contrató los convenios y las cláusulas de arbitraje que ahora quiere repudiar. Págs. 123–124.

■ Después de expresar que "el arbitraje es un medio más apropiado y deseable para resolver las disputas que surgen de la aplicación e interpretación de los convenios colectivos, que la litigación en los tribunales", pág. 127, afirmamos:

> Si sostuviésemos la posición del peticionario en el sentido de que los derechos que surgen de los convenios se pueden arbitrar pero no los que surgen de la ley o de la Constitución, destruiríamos la negociación colectiva ya que casi todos los derechos que surgen de los convenios colectivos . . . se pueden conectar en una forma u otra con la Constitución o con las leyes. Pág. 129.

Desde 1949 lamentamos la ausencia de legislación en Puerto Rico que gobierne el arbitraje laboral. En *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.*, 69 D.P.R. 782, 810 (1949), expresamos:

> . . . sugerimos que habría más certeza en este campo tan controversial y estaría más afín con las tradiciones del derecho civil, si la Asamblea Legislativa aprobara una ley detallada, igual que lo han hecho tantos estados en relación con esta materia.

Esto no ha sucedido, lo que fuerza a este Tribunal a llenar el vacío existente.

*Pérez* fue duramente criticado. D. Fernández, *El Arbitraje Obrero-Patronal en Puerto Rico*, 35 Rev. Jur. U.P.R. 7, 80–88 (1966). Entre muchos otros temores se apuntó al riesgo de que el arbitraje vulnerase derechos concedidos al trabajador directamente por la Constitución o la ley. Decisiones posteriores nuestras han aclarado muchas de las dudas formuladas entonces. Repasémoslas brevemente antes de examinar el alcance de *Barrentine*.

En *Martínez* v. *Com. Oil Ref. Co., Inc.*, 92 D.P.R. 693 (1965), nos enfrentamos a la situación singular, no presentada aquí, de una ley, la de la hora del almuerzo, aprobada con posterioridad al convenio. No alteramos la norma de *Pérez* en *Martínez*, sino que rehusamos extenderla a la situación descrita. Hicimos, sí, en *Martínez*, expresiones adicionales de interés al rehusar desestimar la demanda, por no haberse acudido previamente al procedimiento de arbitraje. Dijimos que "Ni el Comité de Quejas y Agravios, ni un árbitro podrían válidamente dictaminar que a estos obreros no se les pague doble por la hora de alimentos según manda la Ley Núm. 121" (pág. 697), y señalamos nuestra preocupación por la dilación de tres años y medio sufrida por el litigio.

En *Beauchamp* v. *Dorado Beach Hotel*, 98 D.P.R. 633 (1970), precisamos un aspecto vital de la doctrina de *Pérez* en forma aún más tajante que en *Martínez*. En *Beauchamp* se había emitido un laudo a favor del obrero, pero el mismo denegaba su reclamación por una suma igual a la suma no pagada. El obrero reclamó la cantidad adicional. El Tribunal Superior dictó sentencia sumaria en su contra. Resolvimos que *Pérez* no significa que por recurrir al arbitraje el obrero renuncia a los derechos que le reconoce la ley. Afirmamos:

Ni las partes podían pactar en contra de la disposición de ley que ordena la suma adicional, ni el árbitro podía fallar en

> forma que la hiciese inoperante pues los laudos no pueden vio-
> lar la política pública . . . y las disposiciones de ley sobre
> horas y salarios encarnan la política pública del país sobre
> esas cuestiones. Pág. 636.

Añadimos que el trabajador en *Pérez* "confundió el medio, o sea, el mecanismo, con la sustancia. No vio que el Comité y el arbitraje eran mecanismos para determinar si el patrono en efecto le debía las horas extras, pero que la forma de pagarlas está dispuesta por la ley". Pág. 638.

*Beauchamp* reiteró, a la par que elucidó una de sus limitaciones, la vigorosa política puertorriqueña a favor del arbitraje. Para la misma época, en *Nazario* v. *Tribunal Superior*, 98 D.P.R. 846, 854 (1970), rechazamos la contención del Departamento del Trabajo de que, mediante el recurso de acudir a sus abogados, un obrero podía evadir su obligación contractual de someterse a arbitraje. Véase: *San Juan Mercantile Corp.* v. *J.R.T.*, 104 D.P.R. 86 (1975).

En *Sria. del Trabajo* v. *Hull Dobbs*, 101 D.P.R. 286, 289 (1973), señalamos:

> Sin que adelantemos bajo qué circunstancias pueda justifi-
> carse una desviación de la norma de agotamiento establecida
> en *Pérez*, en beneficio de un unionado en particular que por
> justa causa se vea obligado a ignorar el procedimiento de
> arbitraje acordado en el convenio y recurrir a la vía judicial,
> parece propio señalar que en la consideración de las mismas
> debemos actuar con suma cautela en no correr el riesgo de
> desvirtuarla, pues "[r]ecurrir al arbitraje no es un peligro del
> cual hay que huir sino una buena práctica obrero-patronal
> que hay que fomentar".

En *J.R.T.* v. *Caribbean Towers, Inc.*, 102 D.P.R. 774 (1974), extendimos la doctrina de *Beauchamp* a los laudos emitidos por la Junta de Relaciones del Trabajo.

En *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143, 154–155 (1974), reafirmamos, citando a *Pérez*, "nuestra trayectoria judicial —con mayor razón y justificación en casos de arbitraje compulsorio legislativo— de sancionar tales procedi-

mientos por constituir un medio apropiado y deseable para resolver las disputas obrero-patronales. Abona a esta conclusión razones de economía procesal y de tipo pecuniario, menos tecnicismos, mayor flexibilidad y la experiencia acumulada". Aclaramos también una duda surgida a partir de *Pérez* y validamos la facultad arbitral para imponer, como sucedió en *Beauchamp*, penalidades, intereses, costas y honorarios de abogado. Así siguió allanándose el camino para acudir a procedimientos de arbitraje sin sacrificio de supuestas ventajas asequibles tan solo por la vía judicial.

En *S.I.U. de P.R.* v. *Otis Elevator Co.*, 105 D.P.R. 832, 836 (1977), aludimos una vez más al papel especial que juega el arbitraje en la resolución de las disputas obrero-patronales. Recalcamos allí:

> Los procedimientos de arbitraje y laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico. La experiencia en Puerto Rico en las últimas décadas ha demostrado que el arbitraje es un mecanismo que tiende a mantener la estabilidad y paz industrial, propósitos cardinales en nuestras leyes laborales.

Véanse también: *Buena Vista Dairy, Inc.* v. *J.R.T.*, 94 D.P.R. 624, 631 (1967); *J.R.T.* v. *A.C.A.A.*, 107 D.P.R. 84, 90–91 (1978); *J.R.T.* v. *A.F.F.*, 111 D.P.R. 837 (1982); *cf.* K. Stone, *The Post-War Paradigm in American Labor Law*, 90 Yale L.J. 1509 (1981). La norma específica de *Pérez* fue reiterada recientemente en *Rivera* v. *Coop. Ganaderos de Vieques*, 110 D.P.R. 621 (1981).

Del otro lado, hemos reconocido excepciones limitadas a la regla de cumplimiento previo de la obligación de arbitrar. *F.S.E.* v. *J.R.T.*, 111 D.P.R. 505 (1981) (cuando una unión falta a su deber de proveer a sus representados una justa representación); *Hermandad Unión de Empleados* v. *F.S.E.*, 112 D.P.R. 51 (1982) (cuando acudir al arbitraje

constituye un gesto fútil o vacío). Véanse: *Sria. del Trabajo*, supra, pág. 289; *J.R.T.* v. *A.C.A.A.*, supra, pág. 91.

De la jurisprudencia citada pueden extraerse los siguientes principios:

1. En Puerto Rico existe una vigorosa política pública que favorece el arbitraje obrero-patronal, excepto en las situaciones en que la jurisprudencia establece que media justa causa para obviarlo.

2. No puede desecharse el procedimiento de arbitraje pactado en un convenio, aun en casos en que el derecho del trabajador a compensación extra derive directamente de nuestra Constitución o las leyes aprobadas a su amparo.

3. En este último género de disputas, la función del árbitro es determinar, por ejemplo, si se trabajó en exceso de la jornada acordada. La forma de pagar las horas extras, sin embargo, está dispuesta por ley. Nuestra Constitución no autoriza, como tampoco nuestra legislación laboral, que se mermen los derechos de los trabajadores una vez se determine su existencia y alcance por el procedimiento arbitral.

Veamos si estas normas, incorporadas a nuestro ordenamiento jurídico desde hace años en *Pérez, Beauchamp* y otros casos, deben alterarse por razón de *Barrentine*.

En *Barrentine* una unión sometió al procedimiento de arbitraje acordado en el convenio una reclamación por compensación adicional a que algunos de sus representados tenían derecho presuntamente bajo la Ley de Normas Razonables del Trabajo. Se rechazó la reclamación. El convenio disponía que los laudos que se emitiesen serían obligatorios y finales. Los obreros acudieron de todos modos a los tribunales, donde alegaron que tenían derecho a la compensación reclamada por derivarse aquél directamente de la Ley de Normas Razonables del Trabajo y porque la unión no los representó debidamente. El Tribunal de Distrito discutió este último asunto únicamente y falló que la representación había sido adecuada. La Corte de Apelaciones con-

firmó, mas examinó también el primer punto. Al efecto resolvió que los trabajadores renunciaron voluntariamente a todo derecho que pudieran tener a recurrir a la vía judicial al someterse voluntariamente al procedimiento de arbitraje. El Tribunal Supremo de los Estados Unidos revocó la sentencia.

El Tribunal resolvió, contrario a la doctrina en *Pérez* y *Beauchamp* vigente en esta jurisdicción, que cuando el derecho del obrero no deriva del convenio sino de un estatuto diseñado, como la Ley de Normas Razonables del Trabajo, para proveerles garantías a los trabajadores individuales, se puede hacer caso omiso del procedimiento de arbitraje y acudir a los tribunales para un juicio *de novo*. El Tribunal expresó que el peso que se le diese al laudo se determinaría discrecionalmente en cada caso, a la luz de los hechos y circunstancias presentes.

*Barrentine* representa una expansión del principio sentado por el Tribunal Supremo de Estados Unidos hace algunos años en *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36 (1974), un caso de discrimen racial bajo la Ley federal de Derechos Civiles de 1964.

 *Barrentine* tiene tan solo valor persuasivo en esta jurisdicción. El caso ha sido objeto tanto de comentarios favorables como desfavorables. Véanse: Comment, *1980–1981 Annual Survey of Labor Relations and Employment Discrimination Law*, 23 B.C.L. Rev. 82, 225–234 (1981); W. Gould, *The Supreme Court's Labor and Employment Docket in the 1980 Term: Justice Brennan's Term*, 53 U. Colo. L. Rev. 1, 22–28 (1981); R. Coulson, *Justice Brennan on Wheels: "Complete Auto Transit", "Best Freight" and "Clayton v. UAW"*, Proceedings of N.Y.U. Thirty-fourth Annual National Conference on Labor (R. Adelman, ed.), New York, Matthew Bender, 1982, págs. 139–146; J. Sands, *The "Collyer" Doctrine: The State of Play*, Proceedings of N.Y.U. Thirty-fourth Annual National Conference on Labor (R. Adelman, ed.), New York, Matthew Bender, 1982, págs. 97–118.

234

Fuera de si *Barrentine* en realidad autoriza a la luz de sus hechos a desatender del todo el procedimiento de arbitraje, estimamos que los principios que rigen en esta jurisdicción a partir de *Pérez* y *Beauchamp* resuelven en modo más armonioso en esta comunidad la tensión existente en este género de controversias entre el interés por defender los derechos de los trabajadores bajo la Constitución y las leyes y el interés por mantener una vigorosa política a favor del arbitraje como método alterno para la solución de disputas. De nosotros aceptar, por razón de *Barrentine*, el argumento que rechazamos desde *Pérez* al efecto de que las controversias laborales fundadas en la Constitución o las leyes pueden ser ventiladas directamente ante los tribunales, sin antes acudir al procedimiento pactado en los convenios, le estaríamos asestando un golpe de muerte al arbitraje laboral en Puerto Rico e inundaríamos nuestro sistema judicial de litigios que pueden resolverse más rápidamente y en modo no menos justo por procedimientos más flexibles. Las normas imperantes en Puerto Rico, antes reseñadas, mantienen el proceso arbitral en todo su vigor al requerir que se agote inicialmente el remedio que el convenio disponga en tal sentido, a menos que exista justa causa para obviarlo. Se protege al trabajador, del otro lado, en cuanto el árbitro no puede violar la política pública y fijar la compensación en una cuantía menor que la ordenada por la Constitución y las leyes.

En consecuencia resolvemos que *Pérez, Beauchamp* y casos relacionados se mantienen en todo su vigor en esta jurisdicción. En ausencia de justa causa, no puede obviarse en el género de casos que nos ocupa el procedimiento que se haya pactado en un convenio, aunque el derecho a la compensación extra se funde en la Constitución o la ley. El laudo que se rinda será final en cuanto a las determinaciones que se hagan respecto al tiempo adicional trabajado, si alguno, y hechos análogos. Únicamente podrá impugnarse el laudo ante los tribunales por las razones

expuestas en *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.* y casos posteriores. Según establecimos en *Beauchamp*, se considerará una violación de la política pública y, por ende, motivo de impugnación del laudo, fijar para el tiempo extra trabajado una compensación menor que la ordenada por la Constitución o las leyes. En tal caso el tribunal no tendrá facultad para celebrar un juicio *de novo*, sino que se limitará a hacer valer el mandato constitucional o legislativo.

El tribunal de instancia erró en este caso al denegar la moción de sentencia sumaria por razón de *Barrentine*. Resta examinar si surge de los autos justa causa para obviar el arbitraje.

Los obreros señalaron en su contestación a la moción de sentencia sumaria que se acudió al procedimiento de quejas y agravios en noviembre de 1979. Las partes comenzaron conversaciones que desembocaron en el cambio para agosto de 1980 de las prácticas objetadas. Entre setiembre y noviembre de 1980 dos de los querellantes y otros obreros transaron sus reclamaciones sin obtener la aprobación del Secretario del Trabajo. El 11 de setiembre de 1981 los obreros acudieron a los tribunales, donde alegan que se ha dilatado el arbitraje.

Este magro cuadro de hechos no presenta, a nuestro entender, una situación que justifique descartar el arbitraje. Adviértase que no se trata aquí, como en *J.R.T.* v. *U.T.I.G.*, 110 D.P.R. 237 (1980), y *Vaca* v. *Sipes*, 386 U.S. 171 (1967), de una querella contra la unión por representación indebida. No sería fácil fundarla, de todos modos, pues las uniones no están impedidas de intentar lograr acuerdos informales en circunstancias apropiadas. Los trabajadores se quejan de que no se completó el procedimiento de quejas y agravios. La unión quizás pudo pensar, al transcurrir, tras el cambio de prácticas por el patrono y la transacción de casi todas las reclamaciones, casi un año hasta que se incoa la acción judicial en este caso, que la querella

se había desvanecido. Adviértase también que nadie está reclamando que las "transacciones" efectuadas son válidas. En tales circunstancias los obreros pueden reclamar del patrono y la unión que se complete con la requerida prontitud el procedimiento que el convenio dispone. De negarse las partes o interponer objeciones, que no admitiremos, a alguna supuesta expiración de términos, o de irrespetar el árbitro las disposiciones de la Ley Núm. 379, los trabajadores podrán acudir directamente a los tribunales.

*Se expedirá el auto, se revocará la resolución recurrida del honorable Tribunal Superior y se declarará con lugar la sentencia sumaria presentada por la Fundación peticionaria.*