# 2000 DTA 124

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I - SAN JUAN
PANEL III**

CARIBE HILTON HOTEL
Recurrido

v.

UNION DE GUARDIAS Y DETECTIVES PRIVADOS
Recurrente

Núm. KLCE-99-01391

RECEIVED
NOV 2 8 2000
SERIALS DEPT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 31 de marzo de 2000.

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Brau Ramírez y Urgell Cuebas

## TEXTO COMPLETO DE LA RESOLUCION

Recurre ante nos, la Unión de Guardias y Detectives Privados y solicita revoquemos sentencia emitida por el Tribunal de Primera Instancia que dejó sin efecto el laudo emitido por el árbitro Sr. Radamés Jordán Ortiz del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos en los casos A-55-95 y A-1896-98.

**Hechos**

La Unión de Guardias y Detectives Privados (la Unión), en representación de los señores Rafael Pagán, Maximino Berríos, Carlos Pérez, Isaac Franco y Ramón Morales, todos ellos guardias de seguridad del turno diurno, instó querella ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (el Negociado), caso núm. A-319-94, contra el Hotel Caribe Hilton (Hotel), en reclamo de salarios alegadamente adeudados por concepto de media hora de alimentos por el período comprendido desde el 25 de junio de 1989 hasta el 26 de agosto de 1993.

En diciembre de 1993, la Unión y el Hotel suscribieron un Acuerdo y Relevo General mediante el cual los querellantes desistieron del caso A-319-94 y el Hotel pagó a cada cual la compensación adeudada. Por ello, el 3 de enero de 1994, el Negociado emitió resolución ordenando el cierre y archivo con perjuicio de tal causa.

Así las cosas, el 15 de junio de 1994, el delegado de la Unión, Sr. Rafael Rosario Sánchez, cursó carta al Sr. Osvaldo Lorenzana, Director del Departamento de Seguridad del Hotel, reclamando que otros guardias de seguridad del Hotel, los señores Doamel Aguirre, Juan R. Cruzado, Francisco Reyes, Jesús Carrillo, Pedro Villegas, Rafael Rosario, Juan Rosario, Rafael Cruz y Fundador Santos, todos ellos guardias de seguridad del turno nocturno, no disfrutaron el período de almuerzo y no se les ha compensado por ello.

El 21 de junio de 1994, el Sr. Lorenzana solicitó por carta al delegado de la Unión, Sr. Rosario, que le dejara saber por cuántas horas reclamaban *"él y sus muchachos"*. Como segundo paso del procedimiento de Quejas y Agravios, el 23 de junio de 1994, el Sr. Rosario cursó carta a la Directora de Recursos Humanos del Hotel, Sra. Mirta Rivera, con el propósito de continuar a la siguiente etapa con su reclamo, conforme al convenio colectivo. Al día siguiente, la Sra. Ivonne Rivera le contestó expresando que desde hace ya varios meses los guardias de seguridad estaban recibiendo la cantidad que les correspondía, conforme al convenio colectivo.

El 13 de julio de 1994, el delegado de la Unión, Sr. Rosario, envió Memorándum a la Sra. Ivonne Rivera aclarando que el período ahora reclamado correspondía a los años 1989 al 1993 y el 9 de agosto de 1994. La Sra. Mirta Rivera cursó carta al Sr. Rosario solicitándole información adicional sobre el asunto.

Finalmente, y conforme también lo dispone el convenio colectivo, la Unión instó querella contra el Hotel ante el Negociado, casos núm. A-55-95 y A-1896-98, en representación de los ya mencionados señores Daniel Aguirre, Juan R. Cruzado, Francisco Reyes, Juan Carrillo, Pedro Villegas, Rafael Rosario, Juan Rosario, Rafael Cruz y Fundador Santos. En síntesis, reclamó el pago de media hora de alimentos trabajada y no compensada durante los días en que sus representados trabajaron para el Hotel en el turno nocturno entre los años 1989 al 1993.

El Hotel levantó la defensa de falta de arbitrabilidad procesal. Alegó que la reclamación no era arbitrable, toda vez que la Unión no actuó, conforme al procedimiento de quejas y agravios establecido en el convenio colectivo. Específicamente, señaló que la reclamación se remontaba a los años 1989 al 1993 y la querella había sido instada el 15 de junio de 1994.

La Unión, por su parte, alegó que desde antes había estado en negociaciones con el Hotel a los fines de resolver la controversia, pero que el patrono tan sólo llegó a un acuerdo con el grupo de guardias del turno de la mañana y dejó a los del turno nocturno fuera del acuerdo. Adujo que por tal razón, es que a partir del 15 de junio de 1994 inició los procedimientos establecidos en el convenio colectivo respecto a los guardias del turno nocturno.

El árbitro del Negociado, Sr. Radamés Jordán Ortiz, resolvió que la querella presentada era arbitrable. Concluyó que una vez los querellantes se percataron de que no fueron incluidos en el acuerdo del caso A-319-94, cumplieron con el procedimiento de quejas y agravios. En cuanto a los méritos de querella, resolvió que los querellantes tenían derecho a recibir el pago de media hora de alimentos trabajada y no compensada durante los días que trabajaron en el turno nocturno durante los años 1989 al 1993.

Inconforme, el Hotel presentó ante el Tribunal de Primera Instancia recurso de revisión para impugnar el laudo bajo los siguientes fundamentos: 1) la falta de arbitrabilidad de la controversia, por no haber cumplido la Unión con los términos que dispone el Convenio Colectivo para presentar la querella; 2) que erró el árbitro al determinar que procede la reclamación de los querellantes, debido a que no se presentó prueba sobre la cantidad concreta de dinero alegadamente adeudada; y 3) que erró el árbitro al permitirle a la unión la presentación de la querella a pesar de que ya se había resuelto una reclamación por los mismos hechos para el mismo período de tiempo.

El Tribunal de Primera Instancia, mediante sentencia de 26 de octubre de 1999, revocó el laudo emitido. Determinó que la Unión incumplió con el procedimiento de quejas y agravios establecido en el Convenio Colectivo y, por ello, no tenía derecho a tramitar su reclamación ante el foro arbitral, independientemente del mérito de la misma. En lo pertinente concluyó que:

*"De acuerdo con los hechos del presente caso, la última vez que el patrono incurrió en la práctica de no permitirle a los guardias el disfrute de su media hora de tomar alimentos fue en algún momento del año 1993. Una vez los guardias del turno de la mañana ejercieron su reclamo, el patrono dejó de incurrir en dicha práctica (página 75, transcripción). La Unión alega que se atrasó en cumplir con los pasos que dispone el convenio debido a que el patrono la llevó a pensar que en las negociaciones que se estaban realizando estaban incluidos los guardias del turno nocturno. No estamos de acuerdo con dicho argumento, y entendemos que el árbitro se excedió al estimarlo como un hecho probado, ya que dicha conclusión no está sostenida por la prueba presentada."*

De la propia resolución y documento de transacción, surge que sólo se incluyó algunos guardias querellantes, por lo cual la Unión tenía que saber durante el proceso de las negociaciones, que no se estaban incluyendo a todos los posibles interesados. Surge, además, de las propias declaraciones del querellante Rosario, que la primera gestión realizada por los guardias del turno nocturno para reclamar sus horas de alimentos, fue posterior a la resolución del caso de los guardias del turno de la mañana, o sea, después del 3 de enero de 1994, fecha en que se emitió la resolución; y que al enterarse de la transacción, fue que él estimó que los guardias del turno nocturno tenían también derecho a reclamar.

La Unión argumenta que se cumplió con el primer paso al informar al supervisor que los demás guardias debieron ser incluidos en la transacción, pues hizo su reclamo de forma verbal, y comenzaron las conversaciones para resolver el asunto. Sin embargo, no surge de la transcripción en qué fecha se hizo ese primer reclamo, y aun si estimáramos que el mismo se hubiese hecho a tiempo, el segundo paso requiere que se someta el asunto por escrito si no se ha recibido contestación del supervisor inmediato, cinco (5) días después de expirado el término que tiene el supervisor para contestar. La primera vez que se radica por escrito la querella es aproximadamente cinco (5) meses después de emitida la resolución conteniendo la transacción mencionada, durante el mes de junio de 1994. Encontramos que la Unión no cumplió con los términos que fija el convenio colectivo para la radicación de quejas y agravios.

No podemos perder de vista que el convenio colectivo expresamente dispone que los términos para cumplir con el procedimiento de quejas y agravios sólo pueden renunciarse mediante acuerdo por escrito entre el Hotel y la Unión. Resolver lo contrario, permitiría a la Unión obviar el procedimiento establecido en el convenio para tramitar querellas, lo cual tendría el efecto de modificar el convenio, y flexibilizar su interpretación, cosa que el propio convenio prohíbe al establecer que toda renuncia a dicho procedimiento deberá ser por escrito. Ello convertiría la cláusula de quejas y agravios en una inoperante, si cada vez que el patrono y la Unión se encuentren en conversaciones, la última pudiera optar por esperar a finalizar las mismas antes de radicar o no una querella.

Contra dicha sentencia, recurre la Unión e imputa la comisión de los siguientes errores:

*"1. Erró el Honorable Tribunal de Primera Instancia al dictar una sentencia en un recurso de impugnación de laudo patronal en el cual no se cumplió con el requisito jurisdiccional de demostrar la existencia de causales de nulidad que permitan su revocación. Este error de por sí, o por su efecto combinado con el otro error de derecho señalado, es de tal magnitud que conlleva la revocación de la sentencia recurrida.*

*2. Erró el Honorable Tribunal de Primera Instancia al dictar una sentencia revocando un laudo de arbitraje obrero-patronal en el cual se puso en vigor la política pública de que los empleados dispongan de un período para tomar alimentos y que en caso contrario se asuma la penalidad correspondiente establecida por el Legislador. Al así proceder, el Honorable Tribunal de Primera Instancia ratificó la violación a una de las más importantes leyes del trabajo existentes en el ordenamiento laboral. Este error de por sí, o por su efecto combinado con el otro error de derecho señalado, es de tal magnitud que conlleva la revocación de la sentencia recurrida."*

**Exposición y Análisis**

En primer lugar, la Unión señala que erró el Tribunal de Primera Instancia al revocar el laudo emitido por el Negociado, cuando no estaba presente ninguna de las causales de nulidad que permitían su revocación. El error no se cometió.

Es reiterada la norma en esta jurisdicción que requiere de los tribunales de justicia otorgar especial deferencia a los procedimientos de arbitraje y los laudos emitidos en el campo laboral. Estos se consideran *"[e]l trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico." J.R. T. v. Hato Rey Psychiatric Hospital,* 119 D.P.R. 62, 68 (1987); *U. I. L. de Ponce v. Destilería Serrallés, Inc., supra,* a las págs. 353-354; *Pagán Rodríguez v. Fundación Hosp. Dr. Pila,* 114 D.P.R. 224, 231 (1983); *S.I.U. de P.R. v. Otis Elevator Co.,* 105 D.P.R. 832, 836 (1977).

El rol del tribunal, al revisar la validez de un laudo, dependerá de si en la sumisión se pacta que el laudo será emitido *"conforme a derecho".* Cuando ello no se pacta, el árbitro no queda obligado a resolver, conforme al derecho vigente en tales casos. *"[L]as partes que firman un convenio de esta naturaleza deben comprender que han sustituido al árbitro por las cortes". U.G.T. v. Challeger Caribbean Corp.,* 126 D.P.R. 22, 29 (1990*); J.R.T. v. National Packing Co., supra,* a la pág. 166.

La intervención del tribunal, al revisar la validez de un laudo que no ha de conformarse a derecho, necesariamente es muy limitada y de clara autorrestricción o abstención judicial. *J.R.T. v. Hato Rey Psychiatric Hospital, supra; U.I.L. de Ponce v. Destilería Serrallés, Inc., supra,* a las págs. 353-354 (1985). En estos casos el laudo sólo podrá ser exitosamente impugnado cuando se demuestre la existencia: 1) de fraude, 2) conducta impropia del árbitro, 3) falta del debido proceso de ley, 4) ausencia de jurisdicción, 5) omisión en resolver todas las cuestiones en controversia que se sometieron, o 6) que el mismo resulte contrario a la política pública. *Febus y otros v. MARPE Const. Corp.,* 136 D.P.R. (1994), **94 J.T.S. 19,** a la pág. 11548; *J.R.T. v. Vigilantes, Inc.,* 125 D.P.R. 581, 592-593 (1990*); J.R.T. v. Corporación de Crédito Agrícola,* 124 D.P.R. 846, 849 (1989*); J.R.T. v.*

*Hato Rey Psychiatric Hospital, supra; S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832, 836 (1977).

Por el contrario, cuando en la sumisión se pacta que el laudo se resolverá *"conforme a derecho"*, el tribunal tiene una más amplia discreción para revisar el laudo, pudiendo considerar planteamientos respecto a inconsistencias con el derecho vigente. En tales casos, *"[e]l árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral, y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros." Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P.*, 130 D.P.R. 983, 988 (1992); *J.R.T. v. Hato Rey Psychiatric Hospital, supra*, a la pág. 68. El laudo deberá conformarse a la norma legal vigente y estará sujeto a revisión judicial respecto a su validez frente al derecho sustantivo imperante. *Febus y otros v. MARPE Const. Corp., supra*, a la pág. 11547; *J.R.T. v. Corporación de Crédito Agrícola, supra*.

En el caso que nos ocupa, el convenio colectivo otorgado por las partes dispone que el laudo que rinda el árbitro --aún cuando final y obligatorio para las partes-- tiene que ser *"conforme a derecho"* y que la cuestión de arbitrabilidad podrá ser objeto de revisión judicial. Véase Artículo VIII (E) del Convenio Colectivo. Ello así, tanto el Hotel como la Unión podían acudir ante el foro judicial a impugnar el laudo emitido, no sólo en cuanto a las causas de nulidad tradicionalmente reconocidas ya mencionadas, sino también en cuanto a su validez jurídica y en cuanto a la arbitrabilidad de la controversia. *Sonic Knitting Industries v. I.L.G.W.U.*, 106 D.P.R. 557 (1977).

Habiendo alegado el Hotel, como cuestión de derecho, que la controversia no era arbitrable, toda vez los querellantes incumplieron con el procedimiento dispuesto en el convenio colectivo, el tribunal podía intervenir para revisar la validez jurídica del laudo emitido, así como su arbitrabilidad.

Nos corresponde, pues, determinar si los querellantes cumplieron con el procedimiento dispuesto en el convenio colectivo al presentar su querella y si la querella era arbitrable.

El procedimiento en controversia está debidamente reglamentado por el convenio colectivo entre la Unión y el Hotel, específicamente por los artículos VII y VIII, ▮ los cuales, en síntesis, disponen que al existir cualquier controversia relacionada a la aplicación de las disposiciones del convenio, las partes debían seguir el procedimiento de quejas y agravios establecido en el convenio colectivo, según el cual, en primer lugar, el empleado debe presentar su queja en el término de tres días laborables después de surgido el motivo de la misma a su supervisor inmediato. En segundo lugar, si el supervisor no contesta dentro de tres días laborables o si la contestación no le es satisfactoria, el empleado debe radicar una querella por escrito ante el Director de Personal del Hotel, no más tarde de cinco días laborables, luego de vencido el término concedido al supervisor inmediato para contestar la querella inicial. El Director se reunirá con las partes en el término de cinco días laborables y si éstos no llegan a un acuerdo, tendrán cinco días a partir de la determinación del Director para someter el asunto ante un árbitro del Negociado.

En el caso de autos, la reclamación se remonta al período comprendido de junio de 1989 a agosto de 1993. Sin embargo, no es sino hasta el 15 de junio de 1994, estos es, luego de cuatro años y nueve meses y medio de surgir la causa del reclamo, que el delegado de la Unión, Sr. Rafael Rosario Sánchez, inició el procedimiento de quejas y agravios con la reclamación de compensación, entonces cursada al Sr. Osvaldo Lorenzana, Director del Departamento de Seguridad del Hotel.

De lo anterior surge, claramente, que la Unión no cumplió con el procedimiento establecido en el convenio colectivo para la radicación de quejas y agravios. Para obviar tal impedimento, la Unión alega que su reclamación fue instada previamente, junto a la del caso A-319-94. Dicha alegación no nos convence. Según aparece de la prueba documental y tal como concluyó el foro de instancia, los querellantes, todos ellos guardias de seguridad del turno nocturno, no estaban incluidos en la primera reclamación, caso A-319-94. Realmente

éstos iniciaron su reclamo, luego de enterarse que la reclamación anterior prosperó y se transó.

## II

En segundo lugar, la Unión señala que la determinación es contraria a la política pública de que los empleados dispongan de un período de tomar alimentos, según dispuesta en la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. § 271. No tiene razón.

En el presente caso, como cuestión de política pública, no puede obviarse que el procedimiento se pactó en el convenio colectivo que, a su vez, constituye ley entre las partes, aunque el derecho a la compensación se fundamente en la Constitución o en una ley especial. *Pagán v. Fundación Dr. Pila,* 114 D.P.R. 224, 234-235 (1983).

*"Sostener la posición del querellante, no sólo sería incorrecto, sino que equivaldría a poco menos que producir el caos en la contratación colectiva obrero-patronal. Si bien son derechos privados los que reclama el querellante, son derechos que surgen de un contrato ---el convenio colectivo-- y en dicho contrato se pactó, como hemos visto, la manera de dirimir las controversias que surgiesen durante la vigencia del contrato y relacionadas con el mismo ... No puede el querellante pretender beneficiarse de unas cláusulas del convenio y rechazar otras; no puede negociar colectiva e individualmente a la vez." Rivera Adorno v. Autoridad de Tierras de P.R.,* 83 D.P.R. 258, 264 (1961).

### Dictamen

Por los fundamentos expuestos, se deniega la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General