Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| UNIÓN GENERAL DE TRABAJADORES<br><br>Recurrida<br><br>v.<br><br>CORPORACIÓN DE SEGUROS AGRÍCOLAS DE PUERTO RICO<br><br>Peticionaria | KLCE202401168 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CV08131 (Salón: 505)<br><br>Sobre: Impugnación de Laudo de Arbitraje Caso Núm.: A-16-1824 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

Comparece la Corporación de Seguros Agrícolas de Puerto Rico (Corporación o peticionaria) mediante recurso de *Certiorari* y solicita que revisemos la *Sentencia* emitida el 9 de marzo de 2024 por el Tribunal de Primera Instancia, Sala de San Juan. En el referido dictamen, el foro apelado resolvió que la Corporación separó a Esperanza Rodríguez Torres (La Empleada) de su puesto injustificadamente. Adelantamos que, por los argumentos esbozados a continuación, se revoca al foro apelado.

Según surge del expediente, el 16 de abril de 2015, la Empleada fue nombrada a un puesto con carácter probatorio como Contador I en la Corporación. Para adquirir dicho puesto en carácter regular, la Empleada debía aprobar un periodo probatorio de ocho (8) meses, con

fecha de terminación, el 16 de diciembre de 2015. Es meritorio mencionar que a la fecha de los hechos la Corporación y la Unión General de Trabajadores (Unión o recurrida) se encontraban regidas por un Convenio Colectivo con vigencia del 1ro de julio de 2013 al 31 de diciembre de 2016.

Así las cosas, en la primera evaluación del desempeño cuatrimestral de la Empleada, efectuada el 2 de septiembre de 2015, se determinó que la Empleada no alcanzó el resultado esperado en los criterios relacionados a la asistencia y puntualidad. Posteriormente, el 23 de octubre de 2015 la Empleada tuvo un incidente laboral por el que tuvo que ser referida al Fondo del Seguro del Estado. En ese incidente, la misma estuvo en descanso del 9 al 13 de diciembre de 2015—asistió el 14 de diciembre de 2015—; y posteriormente del 15 al 18 de diciembre de 2015. Véase Apéndice en la página 165. En una segunda y última evaluación de desempeño cuatrimestral, efectuada el 17 de diciembre de 2015, nuevamente la Empleada no alcanzó el resultado esperado. Luego, el 21 de diciembre de 2015 la Empleada recibió a la mano y se le informó que no había completado satisfactoriamente su derecho probatorio. Esto, porque durante los ocho (8) meses evaluados, ésta se había ausentado cuarenta y cinco (45) días y poseía un total de veintiocho (28) tardanzas.

Ante ello, el 23 de diciembre de 2015 la Unión presentó una querella ante el Negociado de Conciliación y Arbitraje en la cual solicitó la reinstalación de la Empleada y el pago de haberes dejados de devengar, por entender que la separación de empleo fue injustificada, ya que la Corporación no cumplió con la segunda evaluación y despido de ésta antes de que finalizara el periodo probatorio. La recurrida apoyó

su argumento en el Artículo 14 del Convenio Colectivo, el cual discute el periodo probatorio, surge que:

> **Sección 2:** El período probatorio abarcará un ciclo completo de las funciones del puesto y no será menos de tres (3) meses ni mayor de doce (12) meses o un año (1) y el mismo no será prorrogable**.** El periodo probatorio será aquel establecido en las especificaciones de las clases.
>
> **Sección 3:** Al completar satisfactoriamente el periodo probatorio, el empleado miembro de la unidad apropiada pasará a ser un empleado regular de carrera. […]
>
> .        .        .        .        .        .        .        .
>
> **Sección 7:** El trabajo de todo empleado en período probatorio deberá ser evaluado al menos en dos (2) ocasiones antes de finalizar su periodo probatorio, en cuanto a su productividad, eficiencia, hábitos y actitudes. El empleado adquirirá status regular cuando la evaluación no se realice en el término requerido.

Así las cosas, el 9 de noviembre de 2021, se emitió el *Laudo de Arbitraje*, en la cual se determinó que la separación de empleo estuvo justificada por la interrupción provocada por la propia Empleada al ausentarse y, por ende, desestimó la querella. En desacuerdo con la decisión, la Unión radicó *Escrito de Recurso de Revisión de Laudo de Arbitraje*. Por su parte, el Tribunal de Primera Instancia, emitió una *Orden* a la recurrida para que se acreditase en veinticuatro (24) horas la notificación del *Recurso de Revisión de Laudo de Arbitraje* presentado. La Unión sometió *Moción en Cumplimiento de Orden* en la que presentó prueba de que notificó por correo electrónico a la abogada de récord de la Corporación. Por su parte, la peticionaria radicó *Moción de Desestimación al Recurso de Revisión Laudo de Arbitraje.* Luego, la recurrida radicó *Moción para cumplir orden*, en la que añadió que también existía una notificación automática a través de la plataforma de Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Finalmente, el 9 de marzo de 2023, se emitió *Sentencia* que revocó al *Laudo de Arbitraje* por entender que no llevó a cabo las dos (2) evaluaciones antes de que culminara el periodo probatorio y conforme la Sección 7 del Convenio Colectivo la Empleada adquirió estatus regular como empleada. Añadió que incidió la Corporación al no cumplir con el debido proceso de ley para un empleado de carrera.

Una vez denegada la reconsideración presentada, la Corporación comparece ante este Tribunal de Apelaciones y alega que erró el Tribunal de Primera Instancia al no desestimar el *Recurso de Revisión de Laudo de Arbitraje* por falta de notificación, según establece la Regla 7 de las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas*, 4 LPRA Ap. VIII-B, y *Reglas de Procedimiento Civil* de 2009. Así como al revocar la determinación del *Laudo de Arbitraje*, que concluyó que la separación de empleo de la Empleada estuvo justificada y, por ende, desestimó la querella presentada por la Unión. En posesión de ambos alegatos, estamos en posición de resolver. Veamos.

Como es sabido, el Tribunal Supremo ha reiterado que el arbitraje resulta "el método idóneo para resolver aquellas disputas que surgen de la aplicación e interpretación de los convenios colectivos y, por consiguiente, es un vehículo adecuado para promulgar la paz industrial". *AAA v. UIA*, 199 DPR 638, 649 (2018). Por lo tanto, en nuestra jurisdicción se favorece la utilización del arbitraje para resolver disputas de carácter obrero-patronal. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263 (2021); *CFSE v. Unión de Médicos*, 170 DPR 443 (2009). Ello es así, dado que el arbitraje supone un método alterno ideal, flexible y menos oneroso para resolver controversias que emanan

de la relación laboral. *UGT v. HIMA.*, 212 DPR 492 (2023); *Pagán v. Fund. Hosp. Dr. Pila*, 114 DPR 224 (1983). Asimismo, la interpretación de los laudos de arbitraje merece gran deferencia. *Aut. Puertos v. H.E.O.*, 186 DPR 417 (2012). De modo que "los tribunales podrán atender una impugnación del laudo basada en: (1) fraude, (2) conducta impropia, (3) falta del debido proceso de ley en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que el laudo no resuelva todas las cuestiones en controversia que se sometieron." Íd., pág. 446.

Por su parte, la Regla 32(D) del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, dispone que el vehículo procesal para que este foro apelativo revise las sentencias finales dictadas por el Tribunal de Primera Instancia, tras la revisión judicial de un laudo de arbitraje, es el recurso de *certiorari*. *Hosp. del Maestro v. U.N.T.S.*, 151 DPR 934 (2000). En cuanto a la controversia procesal del caso, la Regla 7 de las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia*, 4 LPRA Ap. VIII-B, establece que para la presentación y notificación de la solicitud de revisión "el recurrente notificará, personalmente o por correo certificado con acuse de recibo".

Como se conoce, "los convenios colectivos, como otros contratos, tienen fuerza de ley entre las partes, siempre que no contravengan las leyes, la moral o el orden público". *UGT v. HIMA*, *supra*, pág. 507 (2023); *AAA v. UIA*, *supra*, pág. 650. Además, al igual que los contratos ordinarios, le son aplicables las disposiciones del Código Civil. *HIETel v. PRTC*, 182 DPR 451 (2011) Así, al pactar su contenido, las partes deben cumplirlo con estricta rigurosidad. *C.O.P.R.*

*v. S.P.U.*, 181 DPR 299 (2011). Como resultado de lo anterior, "ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas y rechazar otras". Íd.

Con respecto a la primera controversia en cuestión, concluimos que no lleva razón el planteamiento de la Corporación en cuanto a que incidió el Tribunal de Primera Instancia al no desestimar el *Recurso de Revisión de Laudo de Arbitraje* por falta de notificación. De las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia, supra*, se desprende que la decisión de desestimar un recurso por el incumplimiento de las reglas está supeditada a la discreción del Tribunal de Primera Instancia. Véase, 4 LPRA Ap. VIII-B R.19. Ciertamente, este juicio dependerá de las circunstancias del caso que tenga ante sí. Íd. Por tanto, resolvemos que en cuanto la deficiencia no ha sido sustancial, el mecanismo procesal de desestimación debe ser considerado como último recurso y, en tal sentido, no intervendremos con la determinación del foro recurrido en este aspecto.

De otra parte, sin embargo, nos queda claro que el que la Empleada se haya ausentado el día en que culminó su periodo probatorio—el 16 de diciembre de 2015— y días antes a este, imposibilitó que la Corporación entregara la segunda evaluación que suscitaba el despido dentro del marco probatorio. Vimos que la Empleada se ausentó del 9 al 13 de diciembre de 2015 y, posteriormente, del 15 al 18 de diciembre de 2015, hasta retornar a sus labores el 21 de diciembre de 2015, día en que se le informó que no cumplió con el tiempo probatorio. Por esta razón, el Árbitro determinó que hubo una interrupción provocada por la propia Empleada. Tal como

reseñamos, las determinaciones de los laudos de arbitraje gozan de gran deferencia. En este sentido, es claro que la decisión del Árbitro no fue arbitraria, ilegal o irrazonable. Además, la Sección 8 del Artículo 14 del Convenio Colectivo dispone que la Empleada podrá ser separada "de su puesto al final del periodo probatorio o en el transcurso del mismo, si se determinara que su progreso y adaptabilidad a las normas establecidas por la Corporación no han sido satisfactorios". Lenguaje que igual aporta un marco amplio de acción dentro del cual se acomodó adecuadamente el ejercicio discrecional emitido por el Árbitro. Por tanto, incidió el Tribunal de Primera Instancia a no conferirle la deferencia dispuesta por el ordenamiento a una determinación de arbitraje con solvencia y racionabilidad suficiente y, por el contrario, revocarla sin que fuera de aplicación alguna de las causales de impugnación.

Por las consideraciones expuestas, se revoca la *Sentencia* objeto del recurso de revisión y se restituye la determinación original del Árbitro.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones