EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Corporación del Fondo del Seguro del Estado | |
|---|---|
| Peticionario | Certiorari |
| v. | 2007 TSPR 35 |
| Unión de Médicos de la Corporación del Fondo del Seguro del Estado | 170 DPR _____ |
| Recurrido | |

Número del Caso: AC-2005-55

Fecha: 6 de marzo de 2007

Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel I

Juez Ponente:
        Hon. Carlos J. López Feliciano

Abogado de la Parte Peticionaria:

        Lcdo. José A. Oliveras González

Abogado de la Parte Recurrida:

        Lcdo. Jaime Enrique Cruz Álvarez

Materia: Impugnación de Laudo Obrero Patronal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Corporación del Fondo del
Seguro del Estado

    Peticionario

        v.                        AC-2005-55

Unión de Médicos de la
Corporación del Fondo del
Seguro del Estado

    Recurrido

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 6 de marzo de 2007.

Nos corresponde determinar si la Corporación del Fondo de Seguro del Estado (en adelante, el Fondo) actuó correctamente al cargar a la licencia por vacaciones de los médicos unionados aquellos días que la Gobernadora de Puerto Rico concedió como días libres con cargo a vacaciones.

I

El Administrador del Fondo y la Unión de Médicos de la Corporación del Fondo de Seguro del Estado (en adelante, la Unión) suscribieron el Convenio Colectivo (en adelante, el Convenio) con vigencia desde el 1 de julio de 2002 hasta el 30

de junio de 2006. En el Artículo 20 de dicho convenio, las partes acordaron cuáles serían los días feriados sin pérdida de paga. Además, se estableció que se considerarían como días feriados sin pérdida de paga y sin cargo a ninguna licencia aquellos días que fueran "declarados como tales" por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley.

Por otra parte, el Artículo 10 del Convenio creó un Comité de Querellas para atender las disputas entre las partes y resolver las controversias sobre la interpretación y la aplicación del Convenio. A tales efectos, se estableció que el Comité de Querellas rendiría un laudo por escrito y que decidiría todas las cuestiones planteadas en la controversia conforme a derecho.

Durante la vigencia del Convenio, la Gobernadora Hon. Sila María Calderón concedió varios días de trabajo como días libres. Específicamente, mediante Proclama concedió los días 24 de octubre de 2003, 28 de noviembre de 2003, y 2 y 5 de enero de 2004, como días libres con cargo a vacaciones. Por otro lado, la Gobernadora concedió como días feriados sin cargo a la licencia de vacaciones los días 26 de diciembre de 2004 y 11 de junio de 2004, según señalado por el Presidente de los Estados Unidos, George W. Bush, mediante Orden Ejecutiva.

En vista de ello, se emitieron varios memorandos, comunicándole al personal gubernamental la concesión de los mencionados días libres, indicando cuáles se concederían con cargo a la licencia de vacaciones y cuáles no. Por otra parte, el Fondo descontó de la licencia de vacaciones los días 24 de octubre de 2003, 28 de noviembre de 2003, y 2 y 5 de enero de 2004.

Durante el año 2004, la Unión presentó al Comité de Querellas varias quejas, alegando que el acto del Fondo de descontar esos días de la licencia de vacaciones era contrario a lo acordado en el Convenio. Por su parte, el Fondo alegó que cargó dichos días a la licencia por vacaciones en atención a ciertos señalamientos hechos por el Contralor de Puerto Rico (en adelante, el Contralor). En lo pertinente, en el Informe de Auditoria CP-98-5 del 4 de marzo de 1998 sobre la Corporación del Fondo del Seguro del Estado (en adelante, el Informe), el Contralor determinó que el acto de pagar a los empleados y a los funcionarios unos días que no han sido trabajados o cargados a la licencia de vacaciones constituye una regalía y, por ende, un desembolso de fondos públicos contrario a la ley.

Celebrada la vista de arbitraje, el Comité de Querellas determinó que el lenguaje del Artículo 20 del Convenio era claro a los efectos de que el Fondo se comprometió a no cargar a ninguna licencia los días concedidos como libres y que, por tanto, violó los

términos del Convenio. Según decretó el Comité de Querellas, el acto de cargar a la licencia de vacaciones los días concedidos como libres fue contrario a la política pública laboral de que los convenios colectivos pueden conceder más beneficios de los establecidos por ley. Además, concluyó que, actuando de esa forma, el Fondo privó a los médicos de un derecho propietario, a saber, los días acumulados para las vacaciones, sin otorgarle la oportunidad de ser escuchados.

No conforme, el Fondo impugnó el laudo ante el Tribunal de Primera Instancia. Dicho foro confirmó la decisión del Comité de Querellas, por entender que lo establecido en el Convenio era claro y no era contrario a la ley, a la moral o al orden público.

Confirmado el dictamen de instancia por el tribunal apelativo intermedio, el Fondo apeló ante nos. Acogimos el recurso como *certiorari* y acordamos expedir. Las partes han comparecido a exponer sus respectivas posiciones. Conforme a ello, resolvemos.

## II

Debemos determinar si el Fondo podía cargar a la licencia por vacaciones aquellos días en que se autorizó a los empleados a ausentarse del trabajo por Proclama de la Gobernadora de Puerto Rico. Por entender que el Fondo sí estaba facultado para hacerlo, revocamos. Veamos.

A

En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 D.P.R. 986 (1993).

Ante un convenio de arbitraje lo más prudente es la abstención judicial, aunque la intervención no esté vedada. *UCPR v. Triangle Engineering Corp.*, 136 D.P.R. 133 (1994). De hecho, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *López v. Destilería Serrallés*, 90 D.P.R. 245 (1964); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988).

En vista de ello, la revisión de los laudos de arbitraje se circunscribe a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia. Sin embargo, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de

las decisiones administrativas. *Rivera v. Dir. Adm. Trib.*, 144 D.P.R. 808 (1998); *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 D.P.R. 347 (1999); *U.C.P.R. v. Triangle Engineering Corp.*, supra.

En efecto, cuando un convenio colectivo dispone que los asuntos sometidos a arbitraje serán resueltos conforme a derecho, el árbitro no puede ignorar las normas de derecho sustantivo en el campo del derecho laboral y debe resolver las controversias a tenor con las doctrinas legales prevalecientes. Por oro lado, si el convenio de arbitraje nada dice en cuanto a esto, los árbitros pueden declarar cuál es la ley, haciendo caso omiso de las reglas de derecho sustantivo. *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604 (1979).

Ahora bien, como los convenios colectivos son contratos, los mismos se rigen por las disposiciones del Código Civil sobre los contratos, a no ser que la ley haya dispuesto otra cosa. *Luce and Co. v. Junta de Relaciones del Trabajo*, 86 D.P.R. 425 (1962). En vista de ello, les aplican las normas de interpretación contractual. En primer lugar, cuando los términos de un contrato son claros y no crean ambigüedades, los mismos se aplicarán en atención al sentido literal que tengan. Artículo 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. 3471.

Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único

sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *Sucesión Ramírez v. Tribunal Superior*, 81 D.P.R. 357 (1959).

Por tanto, si los términos de un contrato o de una cláusula contractual – como en el caso de una cláusula de un convenio colectivo – son suficientemente claros como para entender lo que se pacta, hay que atenerse al sentido literal de las palabras y, por ende, los tribunales no pueden entrar a dirimir sobre lo que alegadamente intentaron las partes pactar al momento de contratar. *Luce & Co. v. Junta del Trabajo*, *supra*.

Por el contrario, cuando los términos no son claros o cuando las palabras dejan duda sobre la intención común de los otorgantes, se exige una labor interpretativa. En esos casos, para adjudicar la intención de las partes, el juzgador debe examinar todas las circunstancias concurrentes al otorgamiento del contrato, atendiéndose principalmente a los actos de los contratantes coetáneos y posteriores al contrato. Artículo 1234 del Código Civil de Puerto Rico, 31 L.P.R.A. 3472; *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983).

También es regla general de hermenéutica contractual que, cuando el texto es obscuro, su interpretación no deberá favorecer a la parte que la hubiese ocasionado. Artículo 1240 del Código Civil de Puerto Rico, 31

L.P.R.A. 3478; *Barreras v. Santana*, 87 D.P.R. 227 (1963). Por ende, las ambigüedades en un contrato o en las cláusulas de un contrato serán interpretadas en contra de la parte que lo redactó. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986).

Una vez se determina lo que las partes acordaron, el juzgador debe resolver las controversias entre las partes acorde a lo estipulado. En efecto, un convenio colectivo, como todo contrato, tiene fuerza de ley entre las partes y debe cumplirse con estricta rigurosidad. Art. 1044 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 2994.

Así, conforme con el principio rector de *pacta sunt servanda*, las partes contratantes se obligan a todos los extremos de lo pactado, siempre y cuando las disposiciones pactadas estén conformes con la ley, la moral y el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 3372; *Pérez v. Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963). Cuando una disposición contractual no está reñida con la ley, la moral o el orden público, se le debe dar aplicación integral a lo convenido. Si, por el contrario, una cláusula de un contrato contraviene la ley, la moral o el orden público, la misma carece de eficacia entre las partes y el juzgador no puede conferirle validez. Por consiguiente, si la decisión del juzgador está fundamentada en un convenio o cláusula contraria a la

ley, la moral o el orden público, la misma es defectuosa y no es válida en la parte en que conflije con ello. *Pagán v. Fund.  Hosp. Dr. Pila*, 114 D.P.R. 224 (1983); *Junta de Relaciones del Trabajo v. Vigilantes*, Inc., 125 D.P.R. 581 (1990).

Específicamente, en el contexto de la contratación gubernamental, hemos dicho que la misma está revestida del más alto interés público en cuanto involucra el uso de bienes o de fondos públicos.  En vista de ello, deben aplicarse rigurosamente las normas sobre los contratos y el desembolso de esos fondos, a los fines de proteger los intereses y el dinero del Pueblo.  Principalmente, no puede ignorarse que todo organismo gubernamental está obligado a observar de forma cabal la esencia de las disposiciones constitucionales en cuanto a que los fondos públicos sólo pueden gastarse para fines públicos legítimos.  Const. E.L.A., Art. VI, Sec. 9, 1 L.P.R.A.; *De Jesús v. Autoridad de Carreteras*, 148 D.P.R. 255 (1999).

Visto el derecho aplicable, analicemos los hechos ante nos.

### III

En el caso *a quo*, nos corresponde evaluar si el Fondo podía cargar a la licencia por vacaciones de los médicos unionados los días que fueron concedidos como libres por la Gobernadora de Puerto Rico.

De entrada, debemos aclarar que las partes acordaron en el Convenio que el Comité de Querellas resolviera las controversias sobre la interpretación y la aplicación del Convenio conforme a derecho. Por ende, el Comité de Querellas no podía ignorar las normas de derecho sustantivo vigentes aplicables a los convenios colectivos. En vista de que los convenios colectivos se rigen por las normas sobre la contratación en general, lo estipulado constituye la ley entre las partes y se entenderá en su sentido literal, si es claro. Por otro lado, los términos ambiguos requieren una labor interpretativa por parte del juzgador conforme a las reglas de hermenéutica contractual.

Con ello en mente, pasemos a analizar lo que las partes estipularon en relación a los días concedidos como días libres. A tales efectos, el Artículo 20 del Convenio establece en lo pertinente lo siguiente:

> Se considerarán, además, días feriados sin pérdida de paga, y sin cargo a ninguna licencia aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley (federal y/o estatal), fueran <u>declarados como tales</u> y se autoriza a los empleados a ausentarse del trabajo. (Énfasis nuestro).

De una simple lectura, surge que el lenguaje utilizado por las partes no es completamente claro o, por lo menos, requiere cierto análisis. En particular, nos referimos a la expresión "declarados como tales". Su redacción nos obliga a volver al principio de la oración

para identificar a qué cosa se remite el pronombre utilizado. Haciendo un análisis literal del texto, parece que dicha expresión se refiera a los "días feriados sin pérdida de paga y sin cargo a ninguna licencia". Parafraseando el texto de la cláusula, los días que sean declarados como "días feriados sin pérdida de paga y sin cargo a ninguna licencia" serán considerados como tales. Si fuera así, las partes se remitieron a la forma en que los días sean declarados por el Gobernador de Puerto Rico o el Presidente de los Estados Unidos, o por Ley. Sin embargo, no podemos excluir otra posible interpretación, ya que no estamos ante una cláusula que tiene un único sentido.

No obstante la evidente ambigüedad textual, el Comité de Querellas determinó que la cláusula mencionada no presentaba ningún problema de interpretación. Inclusive, sostuvo que el lenguaje utilizado por las partes era diáfano y cristalino y que se pactó que el Fondo no podía cargar absolutamente a ninguna licencia los días "declarados como libres". Sin embargo, la cláusula no habla de días "declarados como libres".

En lugar de buscar en el Convenio lo que las partes estipularon y atenerse a ello, el Comité de Querellas tergiversó el texto de la cláusula controvertida y, partiendo de la premisa de que era clara a favor de la Unión, determinó que la prueba testifical apoyaba lo estipulado. A tales efectos, es oportuno señalar que el

Comité de Querellas indicó que normalmente los beneficios otorgados en los convenios colectivos superan los beneficios reconocidos por las leyes. Sin embargo, no analizó si en este caso, en efecto, fue así.

De esa forma, el Comité de Querellas ignoró las normas de hermenéutica contractual que le imponían el deber de atenerse al sentido literal de los términos del Convenio y, después, interpretar las ambigüedades más allá del mero sentido literal de las palabras. Como las partes pactaron que el laudo fuese conforme a derecho, el Comité de Querellas no podía desatender estas normas interpretativas básicas. En vista de que en estos casos nuestra facultad se extiende para revisar, además, los méritos jurídicos de la decisión del árbitro, trataremos de corregir el error cometido, conforme a las reglas de hermenéutica aplicables.

Para ello, debemos señalar que la sección controvertida le sigue a otra, en la cual las partes estipulan un listado de los días que son "días feriados sin pérdida de paga" y que, de hecho, no son cargados a licencia alguna. Con la segunda sección –que está bajo nuestra consideración– las partes estipularon que se considerarían como si fueran "días feriados sin pérdida de paga" –aun cuando no son días feriados– determinados días según sean declarados por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley. Allí está lo determinante a

nuestra controversia, en cuanto esa parte del Artículo 20 fue objeto de una negociación particular entre las partes, según surge de los alegatos y de los documentos sometidos por las partes y que constan en el expediente. Veamos.

En el convenio colectivo anterior, con vigencia desde el 1 de julio de 1999 hasta el 30 de junio de 2002, las partes habían pactado la segunda sección del Artículo 20, en lo pertinente, de la siguiente forma:

> Se considerarán, además, como si fueran días feriados sin pérdida de paga, aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo, disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Énfasis nuestro).

Así formulada, la cláusula claramente establecía que todos los días que fueran declarados como "días feriados" tenían que ser considerados como "días feriados sin pérdida de paga". Por ende, no se hizo distinción entre los días declarados feriados con o sin cargo a licencia alguna. Además, las palabras utilizadas no crean duda de que para los contratantes había que considerar como días feriados sin pérdida de paga todos los días declarados como feriados en Puerto Rico por Proclama u Orden

Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley.

Posteriormente, en la fase de negociación del Convenio, la Unión propuso la siguiente redacción del Artículo 20:

> Se considerarán, además, como si fueran días feriados sin pérdida de paga, y sin cargo a ninguna licencia aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Énfasis nuestro).

Por su parte, mediante propuesta del 16 de agosto de 2002, el Fondo propuso que la cláusula expresara lo siguiente:

> Se considerarán, además, como si fueran días feriados sin pérdida de paga, aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados sin cargo a vacaciones a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Énfasis nuestro).

Comparando las dos propuestas, surge que las partes se distanciaban en la forma en que fueran declarados los días por Proclama u Orden Ejecutiva del Gobernador o del Presidente de Estados Unidos o por Ley, para que fuesen considerados como si fueran "días feriados sin pérdida de paga". En efecto, la Unión quería que todos los días, que fuesen declarados como feriados, fueran considerados "días feriados sin pérdida de paga y sin cargo a ninguna licencia". Por otro lado, con su propuesta el Fondo restringía el trato de los días feriados sin pérdida de paga solamente a los días que fuesen declarados específicamente "días feriados sin cargo a vacaciones".

Finalmente, la última propuesta de la Unión, del 18 de octubre de 2002, formulaba la cláusula de la forma siguiente:

> Se considerarán, además, como si fueran <u>días feriados sin pérdida de paga, y sin cargo a ninguna licencia</u> aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley (federal y/o estatal), fueran <u>declarados como tales</u> y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los médicos unionados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. (Énfasis nuestro).

Así redactada por la Unión, la cláusula fue aceptada por el Fondo y formó parte del convenio colectivo que nos ocupa. No obstante la imprecisión en la redacción y la ambigüedad de los términos utilizados, según examinamos previamente, cabe la interpretación literal que refiere

la palabra "tales" a los "días feriados sin pérdida de paga y sin cargo a ninguna licencia".

Esta interpretación es también la más acorde a las normas de hermenéutica según esbozadas. Veamos. Las propuestas que sometieron la Unión y el Fondo sobre el Artículo 20 del Convenio se diferenciaban exactamente en relación a como tenían que ser declarados los días en la Proclama u Orden Ejecutiva del Gobernador o del Presidente de los Estados Unidos, para que pudiesen ser considerados como días feriados sin pérdida de paga y no ser cargados a licencia alguna. Posteriormente, la Unión sometió otra propuesta y ésta fue la que el Fondo aceptó y que, por tanto, quedó plasmada en el Convenio. Según las normas de interpretación aplicables, cuando una cláusula de un contrato no es clara, la ambigüedad debe ser interpretada en contra de la parte que la redactó.

En vista de ello, debemos concluir que las partes acordaron que, cuando por Proclama u Orden Ejecutiva del Gobernador o del Presidente de Estados Unidos se declare que un día será "feriado sin pérdida de paga y sin cargo a ninguna licencia", entonces el Fondo no podrá cargar ese día a ninguna licencia. Por otra parte, si se declara que el día sea cargado a alguna licencia, así deberá hacerlo el Fondo, pues no está contemplado en el Artículo 20 que sea de otra forma.

En nuestro caso, la Gobernadora Hon. Sila María Calderón mediante Proclama concedió los días 24 de

octubre de 2003, 28 de noviembre de 2003, 2 y 5 de enero de 2004, como días libres <u>con</u> cargo a vacaciones. Además, concedió como días feriados <u>sin</u> cargo a la licencia de vacaciones los días 26 de diciembre de 2004 y 11 de junio de 2004. Conforme al Convenio, el Fondo podía cargar a la licencia por vacaciones sólo los días 24 de octubre de 2003, 28 de noviembre de 2003, y 2 y 5 de enero de 2004. Esto fue lo que el Fondo hizo. Por tanto, no tiene razón la Unión en su reclamación.

Esta interpretación, además, es cónsona con la política pública establecida por la normativa constitucional de que los fondos del estado tienen que usarse para fines públicos. Al mismo tiempo, permite que el Fondo promueva la directriz enunciada por el Contralor en el Informe, a los efectos de que el acto de pagar a los empleados y a los funcionarios unos días que no han sido trabajados o cargados a la licencia de vacaciones, cuando dicho cargo haya sido decretado por el Gobernador de Puerto Rico, constituye una regalía y, por ende, un desembolso de fondos públicos contrario a la ley.

IV

En conclusión, aunque reconocemos el valor que tiene el arbitraje obrero-patronal y la deferencia que se le debe conceder a los laudos, entendemos que en este caso la decisión del Comité de Querellas se basó en un error de interpretación del convenio suscrito por las partes y, por ende, no debe prevalecer. En vista de que tenía que

emitirse un laudo conforme a derecho, el Comité de Querellas no podía ignorar las normas del derecho sustantivo vigente.

Por los fundamentos que preceden, procede revocar la sentencia del Tribunal de Apelaciones y, en consecuencia, la del Tribunal de Primera Instancia y anular el laudo del Comité de Querellas.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Corporación del Fondo del
Seguro del Estado

    Peticionario

       v.                        AC-2005-55

Unión de Médicos de la
Corporación del Fondo del
Seguro del Estado

    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 6 de marzo de 2007.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Apelaciones y, en consecuencia, la del Tribunal de Primera Instancia y se anula el laudo del Comité de Querellas.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.


                      Aida Ileana Oquendo Graulau
                   Secretaria del Tribunal Supremo