El Juez Presidente Señor Hernández Dentón
emitió la opinión del Tribunal.
Nos corresponde determinar si la Corporación del Fondo de Seguro del Estado (Fondo) actuó correctamente al car-gar a la licencia por vacaciones de los médicos unionados aquellos días que la Gobernadora de Puerto Rico concedió como días libres con cargo a vacaciones.
I
El Administrador del Fondo y la Unión de Médicos de la Corporación del Fondo de Seguro del Estado (Unión) suscribieron el Convenio Colectivo (Convenio) con vigencia desde el 1 de julio de 2002 hasta el 30 de junio de 2006. En el Art. 20 de dicho convenio, las partes acordaron cuáles serían los días feriados sin pérdida de paga. Además, se estableció que se considerarían como días feriados sin pérdida de paga y sin cargo a ninguna licencia aquellos días que fueran “declarados como tales” por Proclama u Orden *447 Ejecutiva del Gobernador de Puerto Rico o del Presidente de Estados Unidos, o por ley.
Por otra parte, el Art. 10 del Convenio creó un Comité de Querellas para atender las disputas entre las partes y resolver las controversias sobre la interpretación y la aplicación del Convenio. A tales efectos, se estableció que el Comité de Querellas rendiría un laudo por escrito y que decidiría todas las cuestiones planteadas en la controversia conforme a Derecho.
Durante la vigencia del Convenio, la Gobernadora, Hon. Sila María Calderón, concedió varios días de trabajo como días libres. Específicamente, mediante Proclama concedió los días 24 de octubre de 2003, 28 de noviembre de 2003, y 2 y 5 de enero de 2004 como días libres con cargo a vacaciones. Por otro lado, la Gobernadora concedió como días feriados sin cargo a la licencia de vacaciones los días 26 de diciembre de 2004 y 11 de junio de 2004, según señalado por el Presidente de Estados Unidos, George W. Bush, mediante Orden Ejecutiva.
Por esto, se emitieron varios memorandos en los que se le comunicó al personal gubernamental la concesión de los mencionados días libres, indicando cuáles se concederían con cargo a la licencia de vacaciones y cuáles no. Por otra parte, el Fondo descontó de la licencia de vacaciones los días 24 de octubre de 2003, 28 de noviembre de 2003, y 2 y 5 de enero de 2004.
Durante el 2004, la Unión presentó al Comité de Querellas varias quejas en las que alegó que el acto del Fondo de descontar esos días de la licencia de vacaciones era contrario a lo acordado en el Convenio. Por su parte, el Fondo alegó que cargó esos días a la licencia de vacaciones por ciertos señalamientos que hizo el Contralor de Puerto Rico (Contralor). En lo pertinente, en el Informe de Auditoría CP-98-5 de 4 de marzo de 1998, sobre la Corporación del Fondo del Seguro del Estado (Informe), el Contralor determinó que el acto de pagar a los empleados y funcionarios *448 unos días que no han sido trabajados o cargados a la licencia de vacaciones constituye una regalía y, por ende, un desembolso de fondos públicos contrario a la ley.
Celebrada la vista de arbitraje, el Comité de Querellas determinó que el lenguaje del Art. 20 del Convenio era claro porque el Fondo se comprometió a no cargar a ninguna licencia los días concedidos como libres y que, por lo tanto, violó los términos del Convenio. Según decretó el Comité de Querellas, el acto de cargar a la licencia de vacaciones los días concedidos como libres fue contrario a la política pública laboral de que los convenios colectivos pueden conceder más beneficios de los establecidos por ley. Además, concluyó que, actuando de esa forma, el Fondo privó a los médicos de un derecho propietario; a saber, los días acumulados para las vacaciones, sin otorgarle la oportunidad de ser escuchados.
No conforme, el Fondo impugnó el laudo ante el Tribunal de Primera Instancia. Dicho foro confirmó la decisión del Comité de Querellas por considerar que lo establecido en el Convenio era claro y no era contrario a la ley, a la moral o al orden público.
Confirmado el dictamen de instancia por el tribunal apelativo intermedio, el Fondo apeló ante nos. Acogimos el recurso como certiorari y acordamos expedir. Las partes han comparecido a exponer sus respectivas posiciones. Conforme a ello, resolvemos.
II
Debemos determinar si el Fondo podía cargar a la licencia por vacaciones aquellos días en que mediante Proclama de la Gobernadora de Puerto Rico se autorizó a los empleados a ausentarse del trabajo. Por considerar que el Fondo sí estaba facultado para hacerlo, revocamos. Veamos.
A. En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende *449 que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por lo tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. Martínez Rodríguez v. A.E.E., 133 D.P.R. 986 (1993).
Ante un convenio de arbitraje, lo más prudente es la abstención judicial, aunque la intervención no esté vedada. U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. 133 (1994). De hecho, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. López v. Destilería Serrallés, 90 D.P.R. 245 (1964); J.R.T. v. Junta Adm. Muelle Mun. de Ponce, 122 D.P.R. 318 (1988).
Por lo tanto, la revisión de los laudos de arbitraje se circunscribe a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia. Sin embargo, si las partes pactan que el laudo arbitral sea conforme a Derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. Rivera v. Dir. Adm. Trib., 144 D.P.R. 808 (1998); Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347 (1999); U.C.P.R. v. Triangle Engineering Corp., supra.
En efecto, cuando un convenio colectivo dispone que los asuntos sometidos a arbitraje se resuelvan conforme a Derecho, el árbitro no puede ignorar las normas de Derecho sustantivo en el campo del derecho laboral y debe resolver las controversias de acuerdo con las doctrinas legales prevalecientes. Por oro lado, si el convenio de arbitraje nada dice en cuanto a esto, los árbitros pueden declarar cuál es la ley, haciendo caso omiso de las reglas de *450 derecho sustantivo. Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604 (1979).
Ahora bien, como los convenios colectivos son contratos, se rigen por las disposiciones del Código Civil sobre los contratos, a no ser que la ley haya dispuesto otra cosa. Luce & Co. v. Junta Rel. Trabajo, 86 D.P.R. 425 (1962). Por eso les aplican las normas de interpretación contractual. En primer lugar, cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan. Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471.
Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. Sucn. Ramírez v. Tribl. Superior, 81 D.P.R. 357 (1959).
Por tanto, si los términos de un contrato o de una cláusula contractual —como en el caso de una cláusula de un convenio colectivo— son suficientemente claros como para entender lo que se pacta, hay que atenerse al sentido literal de las palabras y, por ende, los tribunales no pueden entrar a dirimir sobre lo que las partes alegadamente intentaron pactar al momento de contratar. Luce & Co. v. Junta Rel. Trabajo, supra.
Por el contrario, cuando los términos no son claros o cuando las palabras dejan duda sobre la intención común de los otorgantes, se exige una labor interpretativa. En esos casos, para adjudicar la intención de las partes, el juzgador debe examinar todas las circunstancias concurrentes al otorgamiento del contrato, atendiendo principalmente los actos de los contratantes coetáneos y posteriores al contrato. Art. 1234 del Código Civil de Puerto Rico, 31 *451 L.P.R.A. sec. 3472; Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983).
También es regla general de hermenéutica contractual que cuando el texto es obscuro, su interpretación no deberá favorecer a la parte que la haya ocasionado. Art. 1240 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3478; Barreras v. Santana, 87 D.P.R. 227 (1963). Por ende, las ambigüedades en un contrato o en las cláusulas de un contrato serán interpretadas en contra de la parte que lo redactó. González v. Coop. Seguros de Vida de P.R., 117 D.P.R. 659 (1986).
Una vez se determina lo que las partes acordaron, el juzgador debe resolver las controversias entre las partes acorde a lo estipulado. En efecto, un convenio colectivo, como todo contrato, tiene fuerza de ley entre las partes y debe cumplirse con estricta rigurosidad. Art. 1044 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2994.
Así, conforme al principio rector de pacta sunt servanda, las partes contratantes se obligan a todos los extremos de lo pactado, siempre y cuando las disposiciones pactadas estén conformes con la ley, la moral y el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372; Pérez v. Autoridad Fuentes Fluviales, 87 D.P.R. 118 (1963). Cuando una disposición contractual no está reñida con la ley, la moral o el orden público, se le debe dar aplicación integral a lo convenido. Si, por el contrario, una cláusula de un contrato contraviene la ley, la moral o el orden público, la cláusula carece de eficacia entre las partes y el juzgador no puede conferirle validez. Por consiguiente, si la decisión del juzgador está fundamentada en un convenio o cláusula contraria a la ley, la moral o el orden público, la cláusula es defectuosa y no es válida en la parte en que conflije con ello. Pagán v. Fund. Hosp. Dr. Pila, 114 D.P.R. 224 (1983); J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581 (1990).
*452 Específicamente, en el contexto de la contratación gubernamental, hemos dicho que la misma está revestida del más alto interés público en cuanto involucra el uso de bienes o de fondos públicos. Por eso deben aplicarse rigurosamente las normas sobre los contratos y el desembolso de esos fondos para proteger los intereses y el dinero del Pueblo. Principalmente, no se puede ignorar que todo organismo gubernamental está obligado a observar cabalmente la esencia de las disposiciones constitucionales porque los fondos públicos sólo pueden gastarse para fines públicos legítimos. Art. VI, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1; De Jesús González v. A.C., 148 D.P.R. 255 (1999).
Visto el derecho aplicable, analicemos los hechos.
III
En el caso a quo nos corresponde evaluar si el Fondo podía cargar a la licencia por vacaciones de los médicos unionados los días que fueron concedidos como libres por la Gobernadora de Puerto Rico.
De entrada, debemos aclarar que las partes acordaron en el Convenio que el Comité de Querellas resolviera las controversias sobre la interpretación y la aplicación del Convenio conforme a Derecho. Por ende, el Comité de Querellas no podía ignorar las normas de derecho sustantivo vigentes aplicables a los convenios colectivos. Como los convenios colectivos se rigen por las normas sobre la contratación en general, lo estipulado constituye la ley entre las partes y se entenderá en su sentido literal, si es claro. Por otro lado, los términos ambiguos requieren una labor interpretativa por parte del juzgador conforme a las reglas de hermenéutica contractual.
Con ello en mente, pasemos a analizar lo que las partes estipularon con relación a los días concedidos como días libres. A tales efectos, el inciso (2) del Art. 20 del Convenio establece, en lo pertinente, lo siguiente:
*453 Se considerarán, además, días feriados sin pérdida de paga, y sin cargo a ninguna licencia aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley (federal y/o estatal), fueran declarados como tales y se autoriza a los empleados a ausentarse del trabajo. (Enfasis suplido.) Apéndice, pág. 174.
De una simple lectura surge que el lenguaje utilizado por las partes no es completamente claro o, por lo menos, requiere cierto análisis. En particular, nos referimos a la expresión “declarados como tales”. Su redacción nos obliga a volver al principio de la oración para identificar a qué cosa se remite el pronombre utilizado. Haciendo un análisis literal del texto, parece que dicha expresión se refiere a los “días feriados sin pérdida de paga y sin cargo a ninguna licencia”. Parafraseando el texto de la cláusula, los días que sean declarados como “días feriados sin pérdida de paga y sin cargo a ninguna licencia” serán considerados como tales. Si fuera así, las partes se remitieron a la forma en que los días sean declarados por el Gobernador de Puerto Rico o el Presidente de Estados Unidos, o por ley. Sin embargo, no podemos excluir otra posible interpretación, ya que no estamos ante una cláusula que tiene un único sentido.
No obstante la evidente ambigüedad textual, el Comité de Querellas determinó que la cláusula mencionada no presentaba ningún problema de interpretación. Incluso, sostuvo que el lenguaje utilizado por las partes era diáfano y cristalino, y que se pactó que el Fondo no podía cargar absolutamente a ninguna licencia los días “declarados como libres”. Sin embargo, la cláusula no habla de días “declarados como libres”.
En lugar de buscar en el Convenio lo que las partes estipularon y atenerse a ello, el Comité de Querellas tergiversó el texto de la cláusula controvertida y, partiendo de la premisa de que era clara a favor de la Unión, determinó que la prueba testifical apoyaba lo estipulado. A tales efec *454 tos, es oportuno señalar que el Comité de Querellas indicó que normalmente los beneficios otorgados en los convenios colectivos superan los beneficios reconocidos por las leyes. Sin embargo, no analizó si en este caso, en efecto, fue así.
De esa forma, el Comité de Querellas ignoró las normas de hermenéutica contractual que le imponían el deber de atenerse al sentido literal de los términos del Convenio y, después, interpretar las ambigüedades más allá del mero sentido literal de las palabras. Como las partes pactaron que el laudo fuese conforme a Derecho, el Comité de Querellas no podía desatender estas normas interpretativas básicas. En vista de que en estos casos nuestra facultad se extiende para revisar, además, los méritos jurídicos de la decisión del árbitro, trataremos de corregir el error cometido, conforme a las reglas de hermenéutica aplicables.
Para ello, debemos señalar que la sección controvertida le sigue a otra, en la cual las partes estipulan un listado de los días que son “días feriados sin pérdida de paga” y que, de hecho, no se cargan a licencia alguna. Con la segunda sección —que está bajo nuestra consideración— las partes estipularon que se considerarían como si fueran “días feriados sin pérdida de paga” —aun cuando no son días feriados— determinados días, según sean declarados por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de Estados Unidos, o por ley. Allí está lo determinante a nuestra controversia, en cuanto esa parte del Art. 20 del Convenio fue objeto de una negociación particular entre las partes, según surge de los alegatos y los documentos sometidos por las partes y que cons-tan en el expediente. Veamos.
En el convenio colectivo anterior, con vigencia desde el 1 de julio de 1999 hasta el 30 de junio de 2002, las partes habían pactado la segunda sección del Art. 20, en lo pertinente, de la forma siguiente:
Se considerarán, además, como si fueran días feriados sin pérdida de paga, aquellos días o medios días u horas que por *455 Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo, disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Enfasis suplido.) Apéndice del Alegato de la recurrida, pág. 40.
Así formulada, la cláusula claramente establecía que to-dos los días que fueran declarados como “días feriados” tenían que ser considerados como “días feriados sin pérdida de paga”. Por ende, no se hizo distinción entre los días declarados feriados con o sin cargo a licencia alguna. Además, las palabras utilizadas no crean duda de que para los contratantes había que considerar como días feriados sin pérdida de paga todos los días declarados como feriados en Puerto Rico por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de Estados Unidos, o por ley.
Posteriormente, en la fase de negociación del Convenio, la Unión propuso la siguiente redacción del Art. 20:
Se considerarán, además, como si fueran días feriados sin pérdida de paga, y sin cargo a ninguna licencia aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Enfasis suplido.) Apéndice del Alegato de la recurrida, pág. 183.
Por su parte, mediante propuesta de 16 de agosto de 2002, el Fondo propuso que la cláusula expresara lo siguiente:
*456 Se considerarán, además, como si fueran días feriados sin pérdida de paga, aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley, fueran declarados en lo sucesivo días feriados sin cargo a vacaciones a celebrarse en Puerto Rico y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los empleados que se encuentren en uso de licencia no se le hará cargo por el tiempo concedido libre por este concepto. Aquellos días que por ley fueran declarados en lo sucesivo, días feriados, a celebrarse en Puerto Rico, quedarán incluidos como parte de la lista anterior. (Enfasis suplido.) Apéndice del Alegato de la recurrida, pág. 185.
Comparando las dos propuestas, surge que las partes se distanciaban en la forma en que fueran declarados los días por Proclama u Orden Ejecutiva del Gobernador o del Presidente de Estados Unidos o por Ley, para que fuesen considerados como si fueran “días feriados sin pérdida de paga”. En efecto, la Unión quería que todos los días, que fuesen declarados como feriados, fueran considerados “días feriados sin pérdida de paga y sin cargo a ninguna licencia”. Por otro lado, con su propuesta el Fondo restringía el trato de los días feriados sin pérdida de paga solamente a los días que fuesen declarados específicamente “días feriados sin cargo a vacaciones”.
Finalmente, la última propuesta de la Unión, de 18 de octubre de 2002, formulaba la cláusula de la forma siguiente:
Se considerarán, además, días feriados sin pérdida de paga, y sin cargo a ninguna licencia aquellos días o medios días u horas que por Proclama u Orden Ejecutiva del Gobernador de Puerto Rico o del Presidente de los Estados Unidos, o por Ley (federal y/o estatal), fueran declarados como tales y se autoriza a los empleados a ausentarse del trabajo; disponiéndose, además, que a los médicos unionados que se encuentren en uso de licencia no se les hará cargo por el tiempo concedido libre por este concepto. (Énfasis suplido.) Apéndice del Alegato de la recurrida, pág. 190.
Así redactada por la Unión, el Fondo aceptó la cláusula *457 y formó parte del convenio colectivo que nos ocupa. No obstante la imprecisión en la redacción y la ambigüedad de los términos utilizados, según examinamos previamente, cabe la interpretación literal que refiere la palabra “tales” a los “días feriados sin pérdida de paga y sin cargo a ninguna licencia”.
Esta interpretación es también la más acorde con las normas de hermenéutica según esbozadas. Veamos. Las propuestas que sometieron la Unión y el Fondo sobre el Art. 20 del Convenio se diferenciaban exactamente con relación a cómo tenían que ser declarados los días en la Proclama u Orden Ejecutiva del Gobernador o del Presidente de Estados Unidos, para que pudiesen ser considerados como días feriados sin pérdida de paga y no ser cargados a licencia alguna. Posteriormente, la Unión sometió otra propuesta; el Fondo la aceptó y, por lo tanto, quedó plasmada en el Convenio. Según las normas de interpretación aplicables, cuando una cláusula de un contrato no es clara, la ambigüedad debe ser interpretada en contra de la parte que la redactó.
Debemos concluir, por lo tanto, que las partes acordaron que, cuando por Proclama u Orden Ejecutiva del Gobernador o del Presidente de Estados Unidos se declare que un día será “feriado sin pérdida de paga y sin cargo a ninguna licencia”, entonces el Fondo no podrá cargar ese día a ninguna licencia. Por otra parte, si se declara que el día se cargue a alguna licencia, así deberá hacerlo el Fondo, pues no está contemplado en el Art. 20 que sea de otra forma.
En nuestro caso, la Gobernadora, Hon. Sila María Calderón, mediante Proclama concedió los días 24 de octubre de 2003, 28 de noviembre de 2003, 2 y 5 de enero de 2004 como días libres con cargo a vacaciones. Además, concedió como días feriados sin cargo a la licencia de vacaciones los días 26 de diciembre de 2004 y 11 de junio de 2004. Conforme al Convenio, el Fondo podía cargar a la licencia por vacaciones sólo los días 24 de octubre de 2003, 28 de no *458 viembre de 2003, y 2 y 5 de enero de 2004. Esto fue lo que el Fondo hizo. Por lo tanto, no tiene razón la Unión en su reclamación.
Esta interpretación, además, es cónsona con la política pública establecida por la normativa constitucional de que los fondos del estado tienen que usarse para fines públicos. Al mismo tiempo, permite que el Fondo promueva la directriz que enunció el Contralor en el Informe para que el acto de pagar a los empleados y a los funcionarios unos días que no se han trabajado o cargado a la licencia de vacaciones, cuando dicho cargo haya sido decretado por el Gobernador de Puerto Rico, constituye una regalía y, por ende, un desembolso de fondos públicos contrario a la ley.
IV
En conclusión, aunque reconocemos el valor que tiene el arbitraje obrero-patronal y la deferencia que se le debe conceder a los laudos, entendemos que en este caso la decisión del Comité de Querellas se basó en un error de interpretación del convenio suscrito por las partes y, por ende, no debe prevalecer. En vista de que tenía que emitirse un laudo conforme a Derecho, el Comité de Querellas no podía ignorar las normas del derecho sustantivo vigente.
Por los fundamentos que preceden, procede revocar la sentencia del Tribunal de Apelaciones y, en consecuencia, la del Tribunal de Primera Instancia y anular el laudo del Comité de Querellas.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.