# 2009 DTA 70

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

UNIÓN DE TRABAJADORES DE MUELLES, LOCAL 1740
Peticionario

v.

INTERNATIONAL SHIPPING AGENCY, INC. (*"INTERSHIP"*)
Recurrida

Núm. KLCE-2009-00143

San Juan, Puerto Rico, a 23 de abril de 2009

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

Cabán García, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece la Unión de Trabajadores de Muelles de Puerto Rico, Local 1740 (Peticionaria), y nos solicita por vía de *Certiorari* la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 2 de diciembre de 2008, notificada a las partes el 7 de enero de 2009, por virtud de la cual se confirma el laudo apelado y se desestima la demanda por entender que, puesto que la determinación del árbitro cumple con las normas jurisprudenciales, no procede la revocación del laudo impugnado.

Se opone International Shipping Agency, Inc. (Recurrida) a la revisión judicial del laudo y sostiene que este Tribunal carece de jurisdicción para entender en los méritos de la reclamación, toda vez que, como norma general, los laudos sólo son revisables por vía de excepción y el Peticionario no aduce fundamento alguno bajo el cual pueda impugnarse el mismo.

Examinado el expediente del caso y con el beneficio de la comparecencia de ambas partes, el caso quedó sometido para adjudicación.

### I

Las partes en la controversia suscribieron un Convenio Colectivo de trabajo que comenzó a regir el 1 de septiembre de 2001 y expiró el 30 de septiembre de 2004. De acuerdo al párrafo 16 del referido Convenio, aquellos trabajadores que se convirtieron en empleados dentro de la industria con anterioridad al 30 de septiembre de 2001, se considerarían *"empleados viejos"* y recibirían un salario por hora mayor que aquellos que comenzaron a trabajar en la industria después del 1 de octubre de 2001. La Peticionaria se encarga de distinguir, de acuerdo a las fechas de ingresos, entre los empleados nuevos y viejos, entregando una tarjeta a cada uno con la clasificación correspondiente, siendo blanca en caso de ser *"empleados nuevos"* y roja en el caso de los *"empleados viejos"*.

Luego de efectuar una auditoria a tales efectos, la Recurrida entendió que los siguientes empleados estaban mal clasificados y, por tanto, se les estaba remunerando de forma errónea por no ser éstos empleados viejos en la industria: Carlos Tolentino, Noel García Peña, Julio A. García, José A. Claudio y John Bosh. [1] La Recurrida les notifica vía carta que, de acuerdo a sus expedientes y conforme al Convenio Colectivo, éstos eran *"empleados nuevos"*, por lo que su salario no concuerda con lo estipulado. Ante esta situación, les solicitó que, de tener información que pudiese evidenciar que su fecha de comienzo en la industria era diferente a la que reflejaban sus expedientes, presentaran la misma; de lo contrario, serían reclasificados. Sin embargo, la Peticionaria ordenó a los empleados a no someter documento o información alguna. Ante la necesidad de corroborar la información, la Recurrida le solicitó al Plan de Bienestar de la Unión de Trabajadores de Muelles (Plan), organismo fuera del control de la Compañía, que informara la fecha de ingreso de los trabajadores en cuestión. De acuerdo a la información suministrada por el Plan, estos empleados comenzaron en la industria posterior al 1 de octubre de 2001, siendo para todos los fines pertinentes, *"empleados nuevos"*. Así las cosas, la Recurrida procedió a ajustar los salarios conforme estipulado en el Convenio Colectivo.

Posteriormente, la Peticionaria presentó una reclamación de salarios ante el Negociado de Conciliación y Arbitraje alegando que, bajo los términos del Convenio Colectivo, los empleados deben ser remunerados como *"empleados viejos"*, toda vez que su fecha de ingreso en la industria era anterior al 30 de septiembre de 2001. La controversia planteada ante el Árbitro, por acuerdo de sumisión entre las partes, era si conforme al Artículo 16 del Convenio Colectivo, a los empleados en cuestión le correspondía el pago de *"empleado nuevo"*. Celebradas las vistas el 10 de julio de 2007 y 10 de enero de 2008, el Árbitro emitió su laudo resolviendo que los empleados debían ser compensados como *"empleados nuevos"*. Conforme a la evidencia presentada durante las vistas, el Árbitro entendió que se demostró fehaciente y contundentemente que los querellantes ingresaron a la industria con posterioridad al 1 de octubre de 2001. Además, encontró como un hecho probado el que, conforme a la prueba, en las negociaciones se consideró que un empleado que trabaja en la industria es aquél que hace trabajos de los cubiertos por el Convenio Colectivo y que tuviera suficientes horas acumuladas como para recibir los beneficios de la Unión, para lo cual se requiere por lo menos 210 horas de trabajo en un año. Entendió el Árbitro que, ni la prueba presentada por la Peticionaria ni los testimonios vertidos, lograron rebatir la prueba de la Recurrida ni establecer categóricamente que hubiesen trabajado con anterioridad al 1 de octubre de 2001.

Inconforme con esta determinación, la Peticionaria acudió ante el Tribunal de Primera Instancia, Sala de San Juan (TPI), por vía de Demanda en solicitud de revisión del laudo arbitral. La Recurrida se opuso y presentó Moción de Desestimación aduciendo que la Demanda presentada es en realidad una solicitud de revisión a un laudo arbitral, careciendo el TPI de jurisdicción para entender en los méritos, por ser norma establecida que la impugnación de un laudo de arbitraje no puede efectuarse por medio de un procedimiento ordinario de juicio plenario. Sostiene, además, que en todo caso, tampoco se cumplía con ninguno de los fundamentos que facultan al Tribunal a revisar un laudo impugnado, por lo que las determinaciones hechas por el Árbitro no están sujetas a revisión judicial por gozar de gran deferencia. El TPI declaró Ha Lugar la Moción de Desestimación y, en su consecuencia, desestimó la reclamación con perjuicio.

Acude la Peticionaria ante este Tribunal alegando que el foro primario incurrió en el siguiente error:

*"Cometió grave error de Derecho el Tribunal al confirmar el laudo de arbitraje emitido en el caso de autos a pesar de que el mismo [sic] la política pública contra los empleados que afecta especialmente al empleado Bosh."*

## II

En Puerto Rico existe una vigorosa política pública que favorece el arbitraje obrero-patronal como método alterno para la solución de disputas, por ser un mecanismo que mantiene la estabilidad y la paz industrial, principios fundamentales dentro de nuestro derecho laboral. Es, sin duda, un medio más rápido y menos costoso y técnico que los procedimientos judiciales. *J.R.T. v. Hato Rey Psychiatric Hospital*, 119 D.P.R. 62, 68 (1987); *Pagán Rodríguez v. Fundación Hospital Dr. Pila*, 114 D.P.R. 224 (1983).

Puesto que en nuestra jurisdicción no existe una ley que regule el arbitraje laboral y que contenga las disposiciones o normas sustantivas que se aplicarán a los procedimientos, el Tribunal Supremo de Puerto Rico se ha encargado de ir delimitando y estableciendo las doctrinas aplicables al campo del arbitraje, siendo el caso normativo *Junta de Relaciones del Trabajo v. N.Y. & P.R. Steampship Company*, 69 D.P.R. 782 (1949).

Cuando las partes firman un Convenio Colectivo aceptando someter las disputas obrero-patronales a un procedimiento de arbitraje, se entiende que han sustituido los tribunales por el árbitro. *Unión General de Trabajadores v. Challenger Caribbean Corp.*, 126 D.P.R. 22 (1990); *Pagán Rodríguez v. Fundación Hospital Dr. Pila, supra; Junta de Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, 69 D.P.R. 782, 800 (1949). Ello ha llevado a considerar que, aunque un laudo de arbitraje no es un decreto judicial o sentencia, goza de una naturaleza similar. La función del Árbitro, por tanto, es análoga a la de un Tribunal de Primera Instancia; por lo que, el foro primario tiene facultad para revisar, como foro apelativo, las resoluciones que éste emita. *Unión General de Trabajadores*

*v. Challenger Caribbean Corp., supra*. Es por este principio que aquellas controversias que surgen dentro del proceso de arbitraje, no están sujetas a un proceso civil ordinario, sino a un trámite apelativo.

Las partes, en el ejercicio de su autonomía, pueden acordar someter las controversias al proceso voluntario de arbitraje. Como dijéramos anteriormente, dicho ejercicio de voluntad puede establecerse por virtud del Convenio Colectivo. La cláusula de arbitraje pactada voluntariamente se encargará de definir y delimitar el tratamiento que recibirá el agravio. Fernández Quiñones, Demetrio, *El Arbitraje Obrero-Patronal*, Legis Editores SA, 2000, pág. 37. Además, por ser el Convenio la ley entre las partes, éstas están compelidas por su propio acuerdo a aceptar la decisión del árbitro como final y obligatoria. *Id.*

La revisión judicial de un laudo de arbitraje se encuentra sustancialmente limitada por la política judicial de auto-restricción y de deferencia que reiteradamente ha sostenido nuestro Tribunal Supremo de Puerto Rico. El alcance de dicha revisión dependerá de lo que se haya pactado en el Convenio Colectivo en cuanto a la forma en que deben ser resueltas las controversias. Si las partes acordaron voluntariamente que las controversias surgidas al amparo del Convenio tienen que ser resueltas por el árbitro conforme a derecho, aunque como regla general la revisión del laudo es casi inexistente, el mismo estaría sujeto a revisión judicial. También estaría sujeto a revisión aquel laudo donde, aun no estando estipulado en el Convenio, el laudo de arbitraje está fundamentado en la sumisión de las partes [2] y éstas acuerdan que la controversia sea resuelta conforme a derecho. *J.R.T. v. Corporación Crédito Agrícola*, 124 D.P.R. 846 (1989); *J.R.T. v. Junta Adm. de los Muelles Municipio de Ponce*, 122 D.P.R. 318 (1988). En ambos casos, los tribunales podrán revisar el laudo para determinar si cumple con el derecho o ley aplicable. *Colón Molinary v. A.A.A.*, 103 D.P.R. 143 (1973); *U.I.L. de Ponce v. Destilería Serrallés, Inc., supra*.

Cuando el laudo debe ser conforme a derecho, el Árbitro viene obligado a seguir las normas de derecho y a rendir sus laudos a tenor con las mismas. *J.R.T. v. N.Y. & P.R. Steamship Corp., supra*. En estos casos, el Árbitro no tiene autoridad para obviar las reglas de derecho sustantivo. *Sonic Knitting Industries v. I.L.G.W.U.*, 106 D.P. R. 557 (1977). La finalidad de esta norma es que el tribunal intervenga en la etapa de revisión y determine si la aplicación del derecho realizada por el Árbitro es correcta. Claro está, el hecho de que el Convenio Colectivo o, en su defecto, el acuerdo de sumisión, establezcan que el laudo se haga conforme a derecho, no implica que los tribunales van a invalidarlos por el mero hecho de que exista una discrepancia de criterio con lo expuesto en el laudo. Para invalidar el laudo, es necesario que surja de forma evidente que el mismo no se resolvió conforme a derecho. *Rivera v. Samaritano & Corp.*, 108 D.P.R. 604, 609 (1979).

De la normativa antes expuesta, podemos concluir que no todos los laudos tendrán que resolverse conforme a derecho. Cuando ni el Convenio Colectivo ni el acuerdo de sumisión de las partes requieren que el Árbitro resuelva la controversia sometida conforme a derecho, es improcedente la revisión judicial por errores de índole jurídico. En estos casos, los tribunales deberán actuar con gran deferencia por ser los Árbitros los llamados a aplicar e interpretar el Convenio, aunque el tribunal entienda que se ha cometido un error o que hubiese interpretado la cláusula de arbitraje de otra manera. Siendo norma firmemente establecida en nuestro derecho laboral que los procesos de arbitraje merecen la más alta deferencia por parte de los tribunales, la intervención judicial estará limitada por unos principios de auto-restricción. *Condado Plaza v. Asoc. Empleados de Casino*, 149 D.P.R. 347 (1999); *U.G.T. v. Challenger Caribbean Corp., supra*. El Tribunal Supremo de Puerto Rico ha manifestado, en lo pertinente, que:

*"Un laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial. Como regla general puede ser impugnado o anulado si existe algún defecto o insuficiencia en la sumisión o en el laudo mismo que lo invalide, o cuando el procedimiento seguido se ha desviado de manera substancial y perjudicial de las reglas que gobiernen los procedimientos por y ante árbitros. Los tribunales no se inclinan fácilmente a decretar la nulidad de un laudo de arbitraje, y no deben permitir que los mismos sean impugnados a menos que contra ellos pueda levantarse una de las objeciones antes mencionadas o que se alegue y pruebe fraude o mala conducta*

*o la comisión de un grave y perjudicial error que equivalga a una violación del derecho a un debido procedimiento de ley".*

Ríos v. Puerto Rico Cement Corp., 66 D.P.R. 470 (1963).

Conforme a los principios establecidos por vía jurisprudencial, en ausencia de una disposición expresa a los efectos de que el laudo sea emitido conforme a derecho, la determinación del Árbitro podrá ser impugnada, modificada o anulada por los tribunales **únicamente** cuando se demuestra la existencia de: (a) fraude; (b) conducta impropia; (c) falta del debido procedimiento en la celebración de la vista; (d) violación de política pública; (e) falta de jurisdicción; y (f) que el laudo no resuelva todas las cuestiones en controversia que se sometieron. *Condado Plaza v. Asociación de Empleados de Casinos de P.R.,* 149 D.P.R. 347 (1999); *J.R.T. v. Corporación Crédito Agrícola, supra*; *J.R.T. v. N.Y. & P.R. S/S Co., supra.* La mera invocación de una de las causales de nulidad de un laudo de arbitraje no da paso a la revisión judicial.

### III

El recurso de *Certiorari*, por otro lado, es un recurso extraordinario por virtud del cual, se le solicita a un tribunal de mayor jerarquía que ejerza su discreción para corregir algún error cometido por el tribunal inferior. Contrario a los recursos de apelación, el tribunal tiene la facultad de expedir el auto de *Certiorari* de forma discrecional. *García Morales v. Padró Hernández,* 165 D.P.R. 324 (2005). La discreción, sin embargo, no implica que el tribunal pueda abusar de su facultad. *Negrón Placer v. Secretario de Justicia,* 154 D.P.R. 79 (2001). Con el fin de que este Tribunal, al momento de determinar si entiende o no en los méritos los asuntos que le son planteados por vía de *Certiorari*, pueda ejercer su discreción de forma sabia y prudente, el *Reglamento del Tribunal de Apelaciones*, Regla 40, establece aquellos criterios que ha de considerar el tribunal al decidir si expide el auto discrecional o no, a saber:

*"A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*

*B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*

*C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

*D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevado, o de alegatos más elaborados.*

*E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*G) Si la expedición del auto o de la orden de mostar causa evita un fracaso de la justicia."*

4 L.P.R.A. Ap. XXII-B, R. 40.

Al amparo de la antes citada Regla 40, si el Tribunal de Apelaciones decide expedir el auto de *Certiorari*, asume jurisdicción sobre la controversia planteada y puede revisar los planteamientos en sus méritos. *Negrón Placer v. Secretario de Justicia, supra.*

## IV

Aplicada la normativa antes enunciada al recurso ante nos, concluimos que procede denegar la expedición del recurso de *Certiorari* solicitado. Somos del criterio que ni el foro arbitral ni el TPI abusaron de su discreción al determinar que el Árbitro cumplió con las normas jurisprudenciales, por lo que las determinaciones de hechos no están sujetas a revisión judicial. Veamos.

En el caso que tenemos ante nuestra consideración, la Peticionaria presentó una reclamación de salarios ante el Negociado de Conciliación y Arbitraje alegando que, bajo los términos del Convenio Colectivo, los empleados que formaron parte del proceso de arbitraje debían ser remunerados como *"empleados viejos"*, toda vez que su fecha de ingreso en la industria era anterior al 30 de septiembre de 2001. El acuerdo de sumisión al que llegaron las partes fue el siguiente: *"Que el Honorable Árbitro determine si conforme al Artículo 16 de la Estipulación de Carga Mecanizada 2001-2004 a los trabajadores Carlos Tolentino, Noel García, Julio A. García, José A. Claudio y John Bosh le corresponde el pago de empleado nuevo"*. Luego de escuchar y valorar la prueba presentada y los testimonios vertidos, el Árbitro emitió un laudo donde dispuso que los empleados debieron ser remunerados como *"empleados nuevos"* por haber comenzado en la industria posterior al 1 de octubre de 2001.

Inconforme con el laudo emitido, la Peticionaria acude ante el TPI solicitando la impugnación del mismo bajo el fundamento de que el Árbitro venía obligado a decidir conforme a derecho. Argumenta, además, que el TPI tenía jurisdicción para dejar sin efecto el laudo impugnado, puesto que la determinación del Árbitro era contraria a la política pública.

En cuanto al argumento de la Peticionaria de que el Árbitro tenía la obligación de emitir un laudo conforme a derecho, concluimos que no le asiste la razón. Del Convenio Colectivo suscrito por las partes se desprende que éstas acordaron voluntariamente someter las controversias surgidas en la relación obrero-patronal al proceso de arbitraje, por lo que, al así hacerlo, eligieron sustituir al tribunal por un Árbitro, siendo las decisiones emitidas por éste finales y obligatorias. Ahora bien, procedamos a determinar si el laudo debía ser emitido conforme a derecho, tal y como sostiene la Peticionaria.

Sabido es que para que un laudo sea emitido conforme a derecho, las partes deben haber pactado ello de forma voluntaria en el Convenio Colectivo o haberlo estipulado por medio del acuerdo de sumisión sometido al Árbitro. Un análisis del expediente ante nuestra consideración demuestra que el Convenio suscrito por las partes nada dispone en cuanto a que las controversias tengan que ser resueltas conforme a derecho. Tampoco el acuerdo de sumisión al que llegaron las partes estableció que el Árbitro debía emitir un laudo conforme a derecho. Habiendo ausencia total de tal determinación y siendo la revisión de un laudo, como regla general, casi inexistente, la actuación del Árbitro merece gran deferencia judicial por ser ellos los llamados a aplicar e interpretar el Convenio Colectivo. La mera alegación de una interpretación errónea sobre una cláusula de arbitraje no es, por sí sola, suficiente como para apartarnos de los principios de auto-restricción y abstención judicial establecidos. No podemos olvidar que, siendo el Convenio Colectivo la ley entre las partes, no debemos menospreciar su claro texto bajo el pretexto de cumplir con su espíritu. *Código Civil de Puerto Rico*, Artículo 14, 31 L.P.R.A. sec. 14. A tenor con lo anterior, no se sostiene el planteamiento de la Peticionaria de que el laudo tenía que ser emitido conforme a derecho cuando ello no surge del Convenio Colectivo ni del acuerdo de sumisión.

Como segundo fundamento para solicitar la impugnación del laudo emitido, aduce la Peticionaria que aplica el principio de que, en ausencia de una disposición expresa a los efectos de que el laudo sea emitido conforme a derecho, este Tribunal puede anular el laudo cuando el mismo sea contrario a la política pública. Tampoco nos persuade este argumento.

Según estableciéramos anteriormente, uno de los fundamentos que permiten la revisión judicial de un laudo de arbitraje que no fue emitido conforme a derecho, lo es la violación a una política pública. A tales efectos, el

**15**

Tribunal Supremo de Puerto Rico ha establecido que un laudo de arbitraje no puede violar la política pública establecida en las leyes. *Beauchamp v. Dorado Beach Corp.,* 98 D.P.R. 633 (1970). Por lo que, un laudo incompatible con una política pública establecida, por tanto, debe ser considerado nulo. Ha sostenido el Tribunal Supremo de Puerto Rico que son fuentes de política pública, *"la Constitución, las leyes (que incluyen los decretos mandatarios) y los precedentes legales en el ámbito del derecho laboral". Junta de Relaciones del Trabajo v. Vigilantes, Inc.,* 125 D.P.R. 581 (1990). Claro está, para que prospere la teoría de que el laudo es contrario a la política pública, es menester establecer que *"se ha violado una bien definida y dominante política pública en referencia con leyes y precedentes legales."* No prevalecerá la contención que se base en *"consideraciones de supuestos intereses públicos".* Fernández Quiñones, Demetrio, *supra,* pág. 515.

En este caso, el laudo emitido por el Árbitro sostuvo que los empleados sujetos al proceso de arbitraje debían ser remunerados como *"empleados nuevos",* toda vez que comenzaron a trabajar en la industria con posterioridad al 1 de octubre de 2001. La Peticionaria sostiene que tal determinación fue contraria a una política pública establecida. Sin embargo, para fundamentar dicha contención, se limita a citar la cláusula 16 del Convenio Colectivo, la cual estuvo sujeta a interpretación por el Árbitro, sin decir de qué forma tal determinación violó la política pública ni qué disposición legal fue infringida. Dicha cláusula claramente dispone que son empleados nuevos aquéllos que comiencen a trabajar en la industria a partir del 1 de octubre de 2001, entendiendo el Árbitro que los empleados en cuestión eran empleados nuevos, ello amparado en la evidencia presentada durante el proceso de arbitraje. Se trataba, pues, de determinar la fecha de comienzo en la industria como una cuestión evidenciaria, para lo cual ambas partes tuvieron amplia oportunidad de presentar prueba. El Árbitro se limitó a tomar una determinación basada en la prueba presentada y los testimonios vertidos, concluyendo que la fecha de ingreso demostrada por la Recurrida establecía categóricamente la clasificación de los empleados. Tal conclusión en nada contraviene ninguna norma de derecho laboral o disposición legal establecida.

Aclaramos, por último, que el requisito de las horas de trabajo al que hace referencia la Peticionaria no tuvo el efecto de modificar el Convenio Colectivo. Tampoco fue lo que dio lugar a la determinación del Árbitro. Al analizar el laudo emitido, podemos notar que el Árbitro no basó su determinación en el mero hecho de que, como parte de las determinaciones de hechos, se estableciera que la fecha de ingreso al Plan era importante, toda vez que todo empleado que trabaja en la industria, tiene derecho a participar del mismo desde el momento que acumula 210 horas de trabajo. Por el contrario, las conclusiones emitidas por el Árbitro claramente establecen que las fechas de ingreso fueron tomadas de la evidencia presentada por la Recurrida y que dichas fechas, *"inclusive, surgen del propio Plan",* sin que esto implique que la determinación se basó en tal contención. No hay duda, por tanto, que el laudo del Árbitro se fundamentó únicamente en una interpretación de la Cláusula 16 del Convenio Colectivo y la prueba presentada, sin que ello fuera contrario al Convenio Colectivo o a la política pública.

Tomando en consideración que los laudos de arbitraje gozan de una gran deferencia por parte de los tribunales y que no se justifica la intervención judicial en cuestiones de hechos e interpretación de la prueba recibida por los árbitros, somos del criterio de que no se justifica asumir jurisdicción sobre la controversia planteada.

Por todo lo antes expuesto y luego de analizar la normativa y los criterios para expedir el auto de *Certiorari* a la luz de las disposiciones de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* procede denegar la expedición del auto solicitado.

## V

Por los fundamentos anteriormente expuestos, denegamos la expedición del recurso de *Certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

1. Cabe mencionar que, dentro de las estipulaciones de hechos, el laudo establece que sólo los empleados Noel García Peña, John Bosh y José Claudio Báez se presentaron a trabajar con la Recurrida con tarjetas rojas, conforme fueron clasificados por la propia Peticionaria.

2. El acuerdo de sumisión define la controversia sometida al árbitro y, conjuntamente con el Convenio Colectivo, le confiere jurisdicción al árbitro. Fernández Quiñones, Demetrio, *El Arbitraje Obrero-Patronal,* Legis Editores SA, Colombia, 2000, pág. 61.